693 So.2d 969 (1997)
THE FLORIDA BAR, Petitioner,
v.
Robert ROTH, Respondent.
No. 86208.
Supreme Court of Florida.
May 15, 1997.
*970 John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and Rhonda G. Lapin, Bar Counsel, Miami, for Complainant.
Nicholas R. Friedman, Vilas, North Carolina; and A.J. Barranco of the Law Offices of A.J. Barranco & Associates, P.A., Miami, for Respondent.
PER CURIAM.
We have for review the complaint of The Florida Bar and the referee's report regarding alleged ethical breaches by Robert Roth. We have jurisdiction. Art. V, § 15, Fla. Const.
The Bar filed a two-count amended complaint against Roth, alleging violations of the following Rules Regulating the Florida Bar: 4-4.4 (in representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person or knowingly use methods of obtaining evidence that violate the legal rights of such a person); 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); and 4-8.4(d) (a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice).
Following a hearing, the referee made the following findings of fact and recommendations of guilt:

FINDINGS OF FACT

Count I
Roth represented his friend Gerald Gips in a lawsuit brought by one "Jane Doe"[1] as trustee for alleged diversion of trust assets. During a July 7, 1994, telephone settlement conference with Doe's attorney, Roth mentioned that he represented "Renee Roe," the estranged daughter of Jane Doe. Doe's attorney, Steven Hutton, kept notes of the conversation. According to Hutton, Roth went on to say that Doe's husband, "John Doe," would be "hit with a molestation lawsuit" for sexual molestation that allegedly took place twelve to fifteen years ago and that there was no civil or criminal statute of limitations for sexual molestation. Roth then indicated to Hutton that he was looking for a "global settlement." Hutton testified that he understood Roth's statements to be a threat to settle the trust litigation in exchange for avoiding a civil molestation suit and related criminal charges. Hutton did not represent John Doe.
After conferring with Jane and John Doe, Hutton sent Roth a letter dated July 15, 1994, summarizing their telephone conversation and rejecting the offer. Roth testified that Hutton's letter distorted their actual conversation and that he had dictated a quick response to that same effect before going out of town on July 18 and asked that it be faxed to Hutton. Hutton never received such a fax.
The referee found that the mere discussion during the telephone settlement conference *971 of Renee Roe's alleged sexual molestation case against John Doe was sufficient to constitute a threat to induce settlement of the trust litigation. The referee found that Roth's testimony that he did not intend to imply any relationship between the two matters to be "disingenuity of the first order."

Count II
Hutton never received the July 18 letter from Roth. Nor do Roth's office telephone records from the relevant time period indicate a transmission to Hutton's office that would correspond to any such fax transmission. In his initial response to the complaint filed by John Doe, Roth did not mention the July 18 letter. In a subsequent response, Roth attached a copy of the July 18 letter and claimed that it had been faxed it to Hutton. However, he did not include a copy of the accompanying fax transmission cover sheet. Later, upon the Bar's request, he did submit a copy of the fax cover sheet, but it was printed on letterhead stationery that did not exist on July 19, 1994 (it contains the name of an attorney who joined the firm in September 1994).
The referee found that the Bar's presentation of evidence was deficient as to the creation of the fraudulent document. The referee found that the Bar relied almost exclusively on the testimony of Roth's ex-wife Lynne Roth, who testified that she overheard Roth instruct his secretary over the phone to concoct a "dummy fax" and backdate it. However, the referee found that Lynne Roth's testimony had been successfully impeached for bias and motive. The referee also found that the Bar had failed to adduce any other evidence that might prove its allegation that Roth manufactured or directed the manufacture of a fake fax.
Nevertheless, the referee concluded that the fax transmittal sheet was a fraudulent document created by someone in his office. As supervisor of his staff, Roth was responsible for the practices of his office staff. He therefore was found guilty of negligent submission of the fraudulent document. Furthermore, Roth was cavalier about the Bar's inquiry into this matter, as evidenced by his initial failure to produce the disputed July 18 letter and accompanying fax transmittal cover sheet.

RECOMMENDATIONS AS TO GUILT AND DISCIPLINE
As to Count I, the referee recommended that Roth be found guilty of violating rules 4-4.4 and 4-8.4(d). In Count II, the referee recommended that Roth be found guilty of violating rule 4-8.4(d). However, she recommended that he be found not guilty of violating rule 4-8.4(c), due to lack of evidence of intent. In mitigation, the referee noted that Roth has no prior disciplinary history. She also considered the testimony of the numerous character witnesses Roth presented on his behalf, as well as his medical history of dysthymia, chronic mild depression with periodic episodes of major to severe depression, and hypothyroidism, which caused Roth to be physically unresponsive to depression medication.
The referee recommended a public reprimand for Count I and an admonition for Count II. She noted that intent to create the fraud had not been proven, that there was little adverse effect on the legal proceeding, and that Roth's negligence caused injury to himself because it resulted in additional charges against him. The referee also recommended a six-month probation, during which time Roth would be required to: successfully complete four hours of CLE ethics credits; create a written document management policy for his law practice; provide formal ethical training for the law office staff by a non-affiliated professor, judge, or attorney-expert; and file a detailed report of compliance with the clerk of this Court upon completion of each of these terms of probation. With respect to costs, the Bar submitted an affidavit for $3,736.52. The referee reserved jurisdiction to address costs and gave Roth ten days to respond to the Bar's affidavit. The case file contains no further information regarding the resolution of costs.
Neither side appeals the referee's findings of fact or recommendations as to guilt. The Bar appeals only the referee's recommendation of discipline. Roth cross-appeals the referee's denial of his motion to dismiss.
As to Roth's cross-appeal, we conclude that the referee did not err in denying *972 Roth's motion to dismiss. A referee has the discretion to decide whether to grant or deny motions. See, e.g., Florida Bar re Vernell, 520 So.2d 564 (Fla.1988) (holding that it was within the referee's sound discretion to grant a motion for continuance). In this case, the Bar had put on the testimony of Steve Hutton and Lynne Roth to support the allegations in both counts. In addition, numerous stipulations were made, including the answers Roth gave in response to the Bar's amended request for admissions. The evidence was sufficient to survive a motion to dismiss. Roth's attorney conceded this point during his closing argument.
Regarding the Bar's appeal of the referee's recommended discipline, we agree that in Count I, a public reprimand is appropriate discipline for the remarks Roth made to Steve Hutton concerning allegations that John Doe sexually molested his stepdaughter Renee Roe. See, e.g., Florida Bar v. Graham, 679 So.2d 1181, 1182 (Fla.1996) (approving consent judgment imposing public reprimand for various violations including rules 4-4.4 and 4-8.4(d)). The telephone conversation between Roth and Hutton was for the sole purpose of settling the trust litigation. There was no proper reason to mention the sexual molestation matter.
We now address the referee's recommended discipline of admonishment in Count II. The record clearly supports the referee's finding that the fax cover sheet was fraudulently created by someone in Roth's office. However, as the referee correctly stated in her report, the only direct evidence that Roth had personally directed the manufacture of the fake fax or knew about it is the testimony of his ex-wife, Lynne Roth. The referee found Mrs. Roth had been impeached because of bias, and the Bar does not appeal that finding. Thus there is no other evidence that Roth was personally involved in perpetrating the fraud.[2]
Notwithstanding the lack of evidence of Roth's personal involvement in manufacturing the fake fax, we believe that a private admonition is insufficient acknowledgment of the severity of this fraud. In Florida Bar v. Mitchell, 569 So.2d 424 (Fla.1990), this Court approved a fifteen-day suspension for the attorney's negligent supervision of a nonlawyer employee that resulted in a number of forged documents. However, this case is somewhat distinguishable from Mitchell, where the misconduct resulted in neglect of the best interests of the lawyer's clients and the fraud was not an isolated incident. Still, the misconduct in this case involves selfish motive, a reprehensible circumstance. We therefore impose a public reprimand for this violation as well, rather than a private admonishment.
We uphold the remainder of the referee's recommended discipline. Roth is ordered to pay costs in the amount of $3,736.52, for which sum let execution issue.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] We have substituted fictitious names because of the sensitive nature of the allegations made.
[2] The Bar could have called but did not call as a witness Roth's secretary, Babette Bradshaw, who filed an affidavit concerning her preparation of the fax sheet and who testified at the earlier Grievance Committee hearing. During closing argument of the disciplinary hearing, the Bar attempted to reopen the record for a second time in order to introduce the transcripts of the Grievance Committee hearing and Bradshaw's affidavits. The referee denied that motion. Nor did the Bar call as witnesses Gerald Gips or Renee Roe, both of whom are shown as having been sent copies on the purported July 18 letter, and who could have confirmed or denied receiving a copy of the letter.