PER CURIAM.
This matter is before the Court upon The Florida Bar’s petition seeking this Court’s review of the referee’s recommendation as to discipline, and the respondent Arango’s cross-petition for review, asking that “the recommended discipline of admonishment be upheld with some modification(s).” We have jurisdiction. See Art. V, § 15, Fla. Const.
*249 The Bar filed its initial brief urging that Arango be suspended for ninety-one days. Arango filed his “Respondent’s Reply Brief and Cross-Petition for Review” in which he (1) acknowledges that he was guilty of “minor misconduct” warranting admonishment; and (2) challenges the referee’s factual findings regarding the submission of false or fabricated evidence during the disciplinary process.[1]
PROCEEDINGS BELOW
On June 14, 1996, The Florida Bar (the Bar) filed a complaint against Julio V. Aran-go, a member of the Bar since 1978. The complaint charged Arango with violating Rule 4-1.3 of the Rules Regulating The Florida Bar, which provides that “[a] lawyer shall act with reasonable diligence and promptness in representing a client.” The following is a summary of the findings of fact in the referee’s report following an evidentiary hearing on the Bar’s charges.
In June of 1992, Maria Morales was involved as a passenger in an automobile accident and suffered dental and other injuries. Dr. Filiberto Herdocia was Morales’ dentist. Fidelity National Insurance Company (Fidelity) provided personal injury protection (PIP) coverage and Government Employees Insurance Company (Geico) provided liability coverage for the accident.
Morales met with Arango at his offices and retained him to represent her. During the visit, a client information sheet was filled out. Although Arango’s office policy required a prompt determination of whether Morales or a member of her family owned an automobile, it was not until nine months later, in April, 1993, that such a determination was made. This nine-month delay was important because Fidelity, Morales’ insurer, could have asserted a policy defense of lack of timely notice to her subsequent claim for medical expenses. In June, 1994, Arango received two cheeks issued by Fidelity and payable to Morales. Arango placed the cheeks in Morales’ file for some nine months. The checks were subsequently voided and Morales was deprived of the funds until May, 1995.
On March 23 and April 28, 1994, Geico requested that Arango obtain Morales’ dental records from Dr. Herdocia but Arango neglected to respond. On June 9, 1994, Aran-go’s office advised Geico that the records would be provided, but on June 15, 1994, Arango wrote Geico suggesting Geico obtain the records directly from Dr. Herdocia. Gei-co sent Arango a medical authorization form to be signed by Morales, and Morales signed the medical authorization in early July, 1994. Geico sent a letter on August 16, 1994, again requesting the authorization. Arango failed to respond until October 5, 1994, when his staff advised Geico that the medical authorization would be provided. Finally, on October 24, 1994, Arango’s office mailed Geico a copy of the medical authorization, which was notarized on October 20, 1994, some three months after it had actually been signed by Morales. Morales could not have signed the medical authorization on October 20, 1994, because she was out of the country on that date. Thereafter, on January 25, 1995, and on May 25, 1995, Geico again requested Ar-ango’s assistance in obtaining Morales’ pre-accident dental records. However, prior to his eventual discharge as counsel for Morales in late 1995, Arango never acted to secure those records.
After making the above factual findings, the referee concluded that Arango had engaged in a “pattern of neglect” in Morales’ case by (1) failing to diligently ascertain information from Morales relating to whether she owned an automobile; (2) failing to promptly notify Morales of the existence of the two PIP reimbursement checks issued by Fidelity; and (3) failing to diligently represent Morales’ interests relating to her dental records held by Dr. Herdocia. As a result, the referee has recommended that Arango be *250 found guilty of violating Rule 4-1.3 of the Rules Regulating The Florida Bar. The referee also determined in his report that several documents were submitted during the hearing on Arango’s behalf which were either false or fabricated, including (1) Morales’ medical authorization; (2) a letter from Ar-ango’s office to Dr. Herdocia dated October 20, 1994; (3) a letter from Arango’s office to Dr. Herdocia dated February 21, 1995; (4) a letter from Arango’s office to Dr. Herdocia dated March 21, 1995; and (5) various entries in Arango’s log book.
As to discipline, the referee found that Arango’s conduct fell within the scope of Standard 4.42 of the Florida Standards for Imposing Lawyer Sanctions, which provides, in pertinent part, that suspension is appropriate where “a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.” Pursuant to standard 9.22, the referee considered the following in aggravation: (1) Arango’s submission of “suspected” false evidence, “suspected” false statements and other deceptive practices during the disciplinary process; (2) Arango’s failure to acknowledge the wrongful nature of his conduct; and (3) Arango’s substantial experience in the practice of law. In mitigation, the referee considered (1) Arango’s clear prior disciplinary record; (2) Arango’s good character and reputation; and (3) Aran-go’s “apparent” interim rehabilitation. After weighing these considerations, the referee recommended that Arango be admonished in accordance with standard 4.44 and required to pay the costs of these proceedings, which total $8,379.62.

ANALYSIS

Neither the Bar nor Arango challenges the referee’s factual findings regarding (1) Aran-go’s failure to timely ascertain information from Morales relating to whether she owned an automobile; (2) his failure to promptly notify Morales of the existence of the PIP reimbursement checks issued by Fidelity; or (3) his failure to diligently represent Morales’ interests relating to her dental records held by Dr. Herdocia. Further, the record contains competent, substantial evidence to support these findings. Accordingly, we approve these findings.
Arango, however, does challenge the findings of fact pertaining to his alleged submission of false or fabricated evidence. This evidence included (1) Morales’ medical authorization, which was notarized on October 20, 1994; (2) a letter from Arango’s office to Dr. Herdocia dated October 20,1994; (3) a letter from Arango’s office to Dr. Herdocia dated February 21, 1995; (4) a letter from Aran-go’s office to Dr. Herdocia dated March 21, 1995; and (5) various entries in Arango’s log book. Arango argues that the findings of fact on this issue are not supported by the record and are inconsistent with other statements by the referee, his qualified finding in aggravation, and his recommendation as to discipline. However, after reviewing the record and the referee’s report, we approve the referee’s factual findings on this issue.
First, the record supports the referee’s finding that Morales’ medical authorization was falsely notarized. Morales testified that she was in Nicaragua on October 3, 1994, when her mother-in-law passed away, and that she traveled back to the United States on October 26, 1994, which was her husband’s birthday. A copy of Morales’ passport with date stamps by immigration officials was admitted into evidence to support her testimony. Thus, the record supports the referee’s findings that Morales signed her medical authorization while she was in the United States in early July, 1994, and that her medical authorization was falsely notarized as being signed on October 20, 1994.
The record also supports the referee’s findings that three letters allegedly sent by Arango’s office to Dr. Herdocia were fabricated. Marlene Arce, Arango’s secretary and paralegal, testified that she authored the letters and personally mailed them. However, two members of Dr. Herdocia’s staff testified that they did not receive any of the letters. Copies of the three letters were also missing from the allegedly complete file that was provided by Arango to the attorney who succeeded him in representing Morales. The only place these three letters could be found was in a separate file produced by Arango. *251 Thus, even though there is conflicting evidence in the record regarding the three letters, there is competent, substantial evidence to support the referee’s finding that (1) the three letters were fabricated; and (2) prior to Arango’s discharge, his office never attempted to notify Dr. Herdocia’s office that Geico had requested Morales’ preaccident dental records.
Finally, the record supports the referee’s finding that various entries in Arango’s log book were fabricated. The Bar notes that the entry in Arango’s log book on October 20, 1994, stating “Requested medical records from Dr. Herdocia,” could be found to be false because no request for records was made on that date. As discussed in the immediately preceding paragraph, competent, substantial evidence supports the conclusion that Dr. Herdoeia’s office did not receive a letter from Arango’s office dated October 20,1994. In addition, the Bar points to proof that entries in Arango’s log on February 21, 1995, and March 21, 1995, which indicated that someone in his office had spoken with an adjuster at Geico, were false because Geico’s log books contradicted these entries,[2] and it appears that there is competent, substantial evidence to support a finding that several entries in Arango’s log book were fabricated to create the appearance that Arango and his office were diligently pursuing Morales’ case.[3]
Turning now to the referee’s recommendation as to discipline, the Bar argues that admonishment is too lenient and that a ninety-one day suspension is warranted. However, the cases cited by the Bar in support of such a disciplinary sanction are dis- *252 tinguishable from the present case. For example, many of the cases cited by the Bar involved more egregious ethical violations than those present in Arango’s case. See Florida Bar v. Harper, 518 So.2d 262, 263 (Fla.1988) (approving uneontested referee’s report recommending that attorney be suspended for three months where the attorney took no action in client’s case and misrepresented the status of the case to the client on several occasions); Florida Bar v. Adler, 505 So.2d 1334, 1335 (Fla.1987) (approving referee’s recommendation that the experienced tax attorney be suspended for ninety days after the attorney pled guilty to a federal crime based on his willful backdating of joint venture documents to take advantage of tax laws); Florida Bar v. Hotaling, 470 So.2d 689, 690-91 (Fla.1985) (approving uneontest-ed referee’s report recommending eighteen-month suspension where the referee found that the attorney had committed fourteen rule violations); Florida Bar v. Gunther, 390 So.2d 1192, 1193 (Fla.1980) (approving uncontested referee’s report recommending a one-year suspension where attorney failed to notify client of granting of corporate charter, failed to have shares of stock issued, failed to have client named as president, and failed to deliver certified articles of incorporation to client).
In several other cases, the attorney being disciplined had committed prior ethical violations. See Florida Bar v. Schilling, 486 So.2d 551, 552 (Fla.1986) (approving the referee’s recommendation that the attorney be publicly reprimanded and suspended for six months because the attorney “had neglected responsibilities in two matters he took for representation,” and in light of the attorney’s “past conduct”);[4] Florida Bar v. Jones, 457 So.2d 1384, 1384-85 (Fla.1984) (approving uncontested referee’s report recommending that previously disciplined attorney receive a six-month suspension for lying to opposing counsel and failing to settle agreed upon claim until after the opposing party filed suit and obtained a default judgment against his client). Moreover, in the two eases cited by the Bar where this Court’s opinion stated that the attorney at issue had no prior disciplinary record, a severe sanction was imposed due, at least in part, to the attorney’s disregard for the disciplinary process. See Florida Bar v. Jones, 543 So.2d 751, 751-52 (Fla.1989) (suspending attorney for ninety-one days, even though he had no prior disciplinary history, based on his six rule violations and his “callous disregard” of the disciplinary proceedings); Florida Bar v. Fath, 368 So.2d 357, 357-60 (Fla.1979) (approving uncontested referee’s report recommending a three-month suspension based on attorney’s failure to diligently represent client and his “blatant disregard” for the disciplinary proceedings).
Finally, the one case cited by the Bar apparently involving a rule violation similar to the one in the present case does not contain sufficient facts to support a comparison, and, in any event, the discipline in that case was far more severe than that sought by the Bar in this case. See Florida Bar v. Segal, 441 So.2d 624, 625 (Fla.1983) (approving uncontested referee’s report recommending a one-year suspension based on attorney’s failure to attend to legal matter entrusted to him, failure to carry out contract of employment, and failure to pay promptly .to the client funds belonging to the client).
Although a referee’s recommendation as to discipline is persuasive, this Court has the ultimate responsibility to determine the appropriate sanction. See, e.g., Florida Bar v. Reed, 644 So.2d 1355, 1357 (Fla.1994). After reviewing the record, the referee’s report, relevant case law, and the standards for imposing lawyer sanctions, we do agree that admonishment is too lenient and that some suspension is warranted.
Although not on all fours, several cases generally support the imposition of a suspension in the present case. The Bar relied on one such ease, Florida Bar v. Nunes, 661 So.2d 1202 (Fla.1995), in arguing before the referee that Arango deserved a short-term suspension. In Nunes, the attorney at issue *253 wrote a letter to the adverse party’s attorney and improperly copied the letter to the adverse party without permission. See id. at 1203. In attempting to provide an explanation during the disciplinary proceedings as to why he copied the letter to the adverse party, the attorney presented several different stories. See id. In recommending a ten-day suspension and subsequent eighteen-month probation, the referee found no mitigating factors and noted that Nunes had been privately reprimanded nine years earlier. See id. at 1204. The referee in Nunes did, however, consider the same aggravating factors as those considered by the referee in the present case, which included the attorney’s differing explanations for his conduct (standard 9.22(f)), his refusal to acknowledge the wrongful nature of his actions (standard 9.22(g)), and his substantial experience in the practice of law (standard 9.22(i)). See id. Thus, there appears to be enough similarity between Nunes and the present case to support the imposition of a suspension here.
In Florida Bar v. Glick, 693 So.2d 550, 551-52 (Fla.1997), this Court approved the referee’s recommendation that Glick be suspended for, among other things, violating Rule 4-1.3 of the Rules Regulating The Florida Bar by failing to diligently represent his clients. In recommending the appropriate discipline in Glick, the referee considered all of the same aggravating and mitigating factors considered by the referee in the present case. See id. at 552 nn. 1-2. Thus, although the underlying misconduct in Glick may have been more extensive than that which occurred in the present case, it appears similar enough to the present ease to support the imposition of a suspension here.
Another ease involving a suspension is Florida Bar v. Morrison, 496 So.2d 820 (Fla.1986). In Morrison, Morrison neglected a legal matter by failing to timely file an appellate brief even though the court had granted her several extensions of time. See id. at 821. In attempting to explain her alleged failure to file the brief, Morrison testified before a grievance committee that she had mailed the brief in a timely manner, and she offered a postal receipt to support her testimony. See id. Morrison later recanted her prior testimony and stated that the brief had been mailed a week later than she previously had indicated, but even with this recantation the brief still would have been mailed in a timely manner. See id. In addition, Morrison testified that upon learning that the court had never received the supposedly mailed brief, she had her staff prepare a copy of the brief and send it to the court over one month past its due date. See id. An expert document examiner inspected this copy of the brief and testified that it was an original and the source document for the brief in Morrison’s file that was dated as sent in a timely manner. See id. Morrison could not account for any of the above-mentioned discrepancies, and although the referee noted that there was no clear and convincing evidence that Morrison was directly responsible, he found that she was responsible for the actions of her staff. See id. The referee recommended that Morrison be suspended for ten days and placed on probation for one year, and this Court approved that recommendation. See id.
Morrison and the present case are similar in that both cases involve a lack of diligence and the submission of false or fabricated evidence during the disciplinary process. In addition, like Morrison, the record in the present case seems to support a finding that a member of Arango’s staff was responsible for any false or fabricated evidence. As stated in Morrison, however, Arango is responsible for the actions of his staff. See also Florida Bar v. Roth, 693 So.2d 969, 971-72 (Fla.1997); Florida Bar v. Mitchell, 569 So.2d 424, 424 (Fla.1990). Therefore, it appears that Morrison generally supports the imposition of a suspension in this case.
Finally, according to the standards for imposing lawyers sanctions, it would appear that a suspension is warranted in the present case. Standard 4.42 provides, in pertinent part, that suspension is appropriate where “a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.” See Fla. Stds. Imposing Law. Sanes. 4.42. The referee found that Arango’s misconduct fell within the scope of standard 4.42, and that finding is consistent with his other findings that Arango engaged in a “pattern of *254 neglect” and caused both potential and slight actual harm to Morales. Therefore, a suspension appears to be warranted under the standards.
We approve the referee’s findings of fact and recommendation as to guilt. However, contrary to the referee’s recommended discipline of admonishment, we impose a thirty-day suspension as the appropriate discipline, and we direct that the respondent attend the Bar’s Ethics School and pay the costs of this proceeding. This suspension shall be effective thirty days from the date this opinion is issued unless respondent notifies this Court that he seeks an earlier effective date. The filing of a petition for rehearing shall not affect this effective date. Judgment for costs is entered against respondent in favor of The Florida Bar in the amount of $8,379,62, for which, sum let execution issue.
It is so ordered.
HARDING, C.J., and OVERTON, SHAW, KOGAN, WELLS, ANSTEAD and PARIENTE, JJ., concur.

. The Bar moved to strike the second issue raised in Arango’s brief, claiming that the issue was outside the scope of Arango's cross-petition for review. The Court denied the Bar’s motion by order dated February 11, 1998. On March 12, the Bar filed its brief answering Arango’s challenge to the referee’s findings regarding the submission of false or fabricated evidence and reasserting that this Court should reject the referee’s recommended discipline and suspend Ar-ango for at least ninety-one days.

. This log book entry was dated September 6, 1995, and it initially indicated that a member of Arango’s staff had a telephone conversation with adjuster Todd Hutchens at Geico. However, Todd Hutchens was no longer employed at Geico on that date. The log book was corrected with Mr. Hutchens’ name scratched out and replaced with “Phyllis Allen @ Geico,” but the entry still read “he told me that he received dental records from Martha Arellano — but he asked me what was the status as to our representation of Maria Morales” (Emphasis added.) Thus, this log book entry can be construed as being manufactured to give the general appearance that Morales’ case was being worked on diligently, only later being corrected once it was learned that Todd Hutch-ens was no longer employed with Geico.

. We also conclude, contrary to Arango's argument, that the referee’s other comments do not contradict his findings of fact regarding the false or fabricated evidence. The referee’s comments in question make no mention of his findings regarding the false or fabricated evidence, but merely state that he had difficulty resolving some conflicting testimony and that Morales' lack of candor with Arango and Dr. Herdocia’s lack of experience in personal injury matters “caused a great deal of confusion to all parties concerned.” These comments merely reflect that the referee properly performed his duty in weighing the evidence and credibility of the witness in making a disciplinary determination. See Florida Bar v. Lecznar, 690 So.2d 1284, 1287 (Fla.1997) (stating that ”[t]he referee, as finder of fact in Bar disciplinary proceedings, is in a unique position to assess the credibility of witnesses and appraise the circumstances surrounding alleged violations”).
Finally, the referee’s use of the term "suspected” in listing the aggravating factor of submission of false or fabricated evidence, as well as his lenient recommendation as to discipline, merely show that he did not afford great weight to the aggravator. This may be because although competent, substantial evidence supports the referee’s finding regarding the falsity or fabrication of certain evidence submitted by Arango, there is no finding as to whether the submission of such evidence was negligent or intentional or whether Arango manufactured or directed the manufacture of such evidence. . After reviewing the record, there does not appear to be sufficient evidence to support a finding that Arango manufactured or directed the manufacture of false or fabricated evidence, nor does there appear to be sufficient evidence to support a finding that Arango intentionally submitted such evidence in the proceedings below. It is clear from the record that each item of evidence in question was prepared by Marlene Arce, Arango’s paralegal, as she notarized Morales’ medical authorization, allegedly prepared and sent the three letters to Dr. Herdocia’s office, and made the various entries into Arango's log book. Cf. Florida Bar v. Roth, 693 So.2d 969, 971-72 (Fla.1997) (agreeing with the referee that although the record clearly showed that a fax cover sheet was fraudulently created by someone in the attorney’s office, the record did not support a finding that the attorney was personally involved in perpetrating the fraud); Florida Bar v. Mitchell, 569 So.2d 424, 424 (Fla.1990) (imposing fifteen-day suspension, instead of more severe sanction, where attorney’s improperly supervised nonlawyer employee forged documents and failed to return documents to court files, stating that ”[h]ad these acts been committed by Mitchell himself, they would have warranted much more severe discipline”).

. The Bar incorrectly asserts that no aggravating factors were present in Schilling; the referee in Schilling clearly took the attorney's “past conduct” into account in making a recommendation as to discipline. See 486 So.2d at 552.