759 So.2d 639 (2000)
THE FLORIDA BAR, Complainant,
v.
Evan Robert WOLFE, Respondent.
No. SC94226.
Supreme Court of Florida.
March 30, 2000.
*640 John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Staff Counsel, Tallahassee, Florida; and Jan K. Wichrowski, Bar Counsel, Orlando, Florida, for Complainant.
Richard B. Marx, Miami, Florida, for Respondent.

REVISED OPINION
PER CURIAM.
We have for review the complaint of The Florida Bar and the referee's report regarding alleged ethical breaches by Evan Robert Wolfe. The referee has recommended a ninety-day suspension followed by a five-year probationary period. The Florida Bar seeks review, requesting a three-year suspension followed by a three-year probationary period. We have jurisdiction. Art. V, § 15, Fla. Const.

FACTS
On November 2, 1998, the Florida Bar filed a complaint against Wolfe. On March 29, 1999, Wolfe stipulated to the following facts.
Count I. On February 23, 1998, a series of tornadoes struck Osceola and Seminole Counties, Florida, damaging homes and killing or injuring a large number of people. Between March 1, 1998, and March 7, 1998, Wolfe approached David Cignotti, Paul Bruno, Nancy Thomas, and Janet Sharp at their respective homes in Osceola and Seminole Counties. The home of each individual had been damaged by the tornadoes and Thomas's husband was killed. Wolfe advised each of these individuals that he could assist them in obtaining the maximum settlement from their insurance companies and gave them flyers and brochures advertising his services. Wolfe gave the Cignottis and Sharp extra brochures and flyers for them to distribute to friends and neighbors.
Wolfe presented all four parties with contingency fee contracts. After the Cignottis advised Wolfe that Carmen Rivera, Mrs. Cignotti's mother, owned the home where they resided and which had been damaged by the tornadoes, Wolfe presented them with a completed contingency fee contract to be signed by Rivera. Wolfe told the Cignottis that his fee would be 10% of any gross recovery or 25% of any amount obtained in excess of the insurance company's current offer, with a required *641 $350 cost deposit to be provided prior to the rendition of services. Wolfe gave Bruno and his wife a contingency contract which provided that Wolfe's fee would be 10% of any gross recovery. Wolfe delivered a contingency fee contract completed in the names of Thomas and Rose Serrano[1] to Thomas, which provided that Wolfe's fee would be 20% of the gross recovery, with an initial $250 cost deposit to be provided. Wolfe never spoke to Serrano or met Serrano. All conversations concerning her interest in the home were conducted through a friend of Thomas and Serrano. Thomas executed the contract, but Serrano declined. Wolfe gave the Sharps a contingency fee contract which provided that Wolfe's fee would be 25% of the gross recovery or 25% of the $84,800 already offered by their insurance company.
In March, 1998, Wolfe advised Jose Vasquez that he would pay him a referral fee for each Hispanic client referred to Wolfe in exchange for Vasquez providing translation services. Vasquez referred at least one client to Wolfe, Marilyn Escobar, in connection with the damage inflicted upon her home by the tornadoes.
Vasquez' parents retained Wolfe to represent them in obtaining the maximum settlement from their insurance company. The Vasquezes paid Wolfe $250 and Wolfe's fee was to be 25% of the recovery. The Vasquezes' insurance company did not receive any communication from Wolfe until approximately May 23, 1998. The Vasquezes also had trouble contacting Wolfe by telephone to inquire about the status of the matter.
Count II. Wolfe did not file either his flyer or his brochure with the Florida Bar's standing committee on advertising either prior to, or contemporaneously with, its first dissemination. Neither the flyer nor the brochure (1) were accompanied by a statement of Wolfe's qualifications and experience; (2) were marked "Advertisement" in red ink; (3) stated that if the recipient had already retained counsel for representation in the matter, the advertisement should be disregarded; or (4) disclosed the source from which Wolfe obtained his information regarding the recipient's need for legal services.
The flyer did not disclose whether (1) the client would be liable for any expenses in addition to the fee, (2) the client would be liable for expenses regardless of the outcome of the case, or (3) the percentage fee would be computed before expenses were deducted from the recovery.
Wolfe's brochure contained numerous testimonials and endorsements concerning his past representation of clients in negotiating insurance claims. The brochure contained statements that were likely to create unjustified expectations about the results he could achieve, such as "he knows his business and gets excellent results." The brochure contained self-laudatory statements such as "reliable performance of superior quality."
Count III. The contingency fee contracts that Wolfe entered into, or attempted to enter into, with Ms. Rivera, the Brunos, Ms. Thomas, Ms. Serrano, and the Sharps were obtained through in-person solicitation where Wolfe had no prior personal, professional or familial relationship with any of the prospective clients. The contingency fee contracts (1) were not accompanied by a statement of client's rights; (2) contained no language stating that the clients had received and read the statement of client's rights; (3) contained no language stating that the client could rescind the contract, in writing, within three business days after the date of execution; (4) were not marked "Sample" even though Wolfe did not meet with or speak to several of the prospective clients in whose names the contracts were written; *642 namely, Ms. Rivera, Ms. Serrano, and Mrs. Bruno.
As to Count I, Wolfe stipulated to the following violations: Rules Regulating the Florida Bar 4-7.4(a) ("A lawyer shall not solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship....") and 4-7.4(b)(1)(A),(F) ("A lawyer shall not send ... a written communication to a prospective client for the purpose of obtaining professional employment if (A) the written communication ... relates to an accident or disaster involving the person to whom the communication is addressed ... unless the accident or disaster occurred more than 30 days prior to the mailing of the communication; ... (F) the lawyer knows or reasonably should know that the physical, emotional, or mental state of the person makes it unlikely that the person would exercise reasonable judgment in employing a lawyer.").
As to Count II, Wolfe stipulated to violating Rules Regulating the Florida Bar 4-7.1(b) (prohibiting lawyers from making communications that are "likely to create an unjustified expectation about results the lawyer can achieve"); 4-7.1(d) (prohibiting lawyers from making communications that contain a testimonial); 4-7.2(h) (mandating that every advertisement containing information about a lawyer's fee shall disclose whether the client will be liable for any expenses in addition to the fee, whether the client will be liable for expenses regardless of the outcome of the case, and whether the percentage fee will be computed before expenses are deducted from the recovery); 4-7.2(j) (prohibiting self-laudatory statements in advertisements and written communications); 4-7.2(p)[2] (mandating that a communication be submitted to the standing committee on advertising either prior to or contemporaneously with the advertisement's first dissemination); 4-7.4(b)(1)(D)-(E)("A lawyer shall not send ... a written communication to a prospective client for the purpose of obtaining professional employment if... (D) the communication involves coercion, duress, fraud, overreaching, harassment, intimidation or undue influence; (E) the communication contains a false, fraudulent, misleading, deceptive, or unfair statement or claim or is improper under rule 4-7.1 ...."); 4-7.4(b)(2)(A) (mandating that written communications be marked "advertisement" in red ink); 4-7.4(b)(2)(B) (mandating that a written communication be filed with the standing committee on advertising either prior to, or contemporaneously with, its first mailing); 4-7.4(b)(2)(E) (mandating that written communications be accompanied by a statement of the lawyer's qualifications); 4-7.4(b)(2)(G) (mandating that written communications must state that if the recipient has already retained counsel, the recipient should disregard the flyer or brochure); and 4-7.4(b)(2)(J) (providing that "[a]ny written communication prompted by a specific occurrence involving or affecting the intended recipient of the communication ... shall disclose how the lawyer obtained the information prompting the communication.").
As to Count III, Wolfe stipulated to having violated Rules Regulating the Florida Bar 4-1.5(a) (prohibiting a lawyer from entering into an agreement for a fee generated by employment obtained through advertisements or solicitations not in compliance with the Rules Regulating The Florida Bar); 4-1.5(f)(4)(A)(i)-(ii) (mandating that a contingent fee contract must contain provisions (i) stating that the client has read and received the statement of client's rights and (ii) providing that the client may rescind the contract, in writing, within three business days after the date of execution); and 4-1.5(f)(4)(C) (mandating that prior to entering a contingent fee agreement, the lawyer must provide the prospective client with a statement of client's rights).

*643 REFEREE'S REPORT

In his report, the referee adopted and approved Wolfe's stipulations. The referee also recommended that Wolfe be found guilty of the stipulated rule violations.
In recommending discipline, the referee recognized that Wolfe's solicitations after the tornadoes damaged the public's perception of the legal profession and increased the anguish suffered by the victims of the disasters. The referee also noted that Wolfe has a long-term addiction to cocaine, but is currently in the Florida Lawyers Assistance, Inc., (FLA) drug rehabilitation program. The referee recommended that Wolfe be subject to discipline in the form of a suspension for ninety days, followed by a five-year probationary period. As part of his probation, the referee recommended that Wolfe be required to continue his participation in the FLA program and that during the first two years of his probation he be supervised by an attorney acceptable to the Bar. Finally, the referee recommended that Wolfe be required to work in a firm with other attorneys and complete ten hours of ethics credits.
In making this recommendation, the referee considered the following aggravating factors: (a) prior disciplinary record (a public reprimand in 1997 for a trust account violation); (b) dishonest or selfish motive; (c) multiple offenses (although the referee noted that these offenses were actually part of the same scheme and occurred over a short period of time); (d) submission of false evidence (Wolfe's former counsel, who was discharged prior to this appeal, submitted a statement of defense that contained misstatements of fact to the grievance committee; however, the referee noted that the response was not sworn to and Wolfe did not testify under oath); (e) vulnerability of the victims; and (f) substantial experience in the practice of law (the referee found that Wolfe has been in practice for fourteen years; however, he also considered the fact that Wolfe had been a sole practitioner from the time he graduated from law school, and had only joined a firm recently).
The referee considered the following mitigating factors: (a) personal and emotional problems (a long-term cocaine addition which the referee found would impair judgment); (b) cooperation with the disciplinary board (even though Wolfe's former counsel, who was discharged prior to this appeal, had previously filed a statement of defense with misstatements of fact, Wolfe entered into a stipulation of facts admitting his wrongdoing); (c) inexperience in the practice of law (Wolfe had been a sole practitioner since his graduation from law school until just prior to the hearing; therefore, he never had the benefit of guidance and supervision from senior partners or other associates); (d) physical or mental impairment (Wolfe's long-term cocaine addiction); (e) interim rehabilitation (Wolfe's voluntary commencement of an in-house rehabilitation program, his completion of a ninety-day rehabilitation program in Mississippi, and his active participation in the three-year FLA program); and (f) remorse.
In recommending a ninety-day suspension, the referee noted that a ninety-one day suspension, which requires an attorney to demonstrate rehabilitation before being reinstated, was not necessary because Wolfe's rehabilitation in the instant case consists of the FLA program in which Wolfe is already a participant, but will not complete for approximately three years.
The Bar seeks review of the referee's report.

ANALYSIS
Wolfe has stipulated to the facts along with corresponding rule violations, and the Bar has not contested the referee's recommendations of guilt. Therefore, we find Wolfe guilty of the rule violations found by the referee in his report.
The issue upon which this Court now must focus is whether the referee's recommendation of a ninety-day suspension *644 followed by a five-year probationary period is reasonably supported by existing case law. See Florida Bar v. Fredericks, 731 So.2d 1249, 1254 (Fla.1999). The Bar argues that such discipline is far too lenient and that a three-year suspension followed by a three-year probationary period would be more appropriate.
In reviewing a referee's recommendation of discipline, this Court's "scope of review is somewhat broader than that afforded to findings of fact because, ultimately, it is [the Court's] responsibility to order an appropriate punishment." Florida Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989). This Court has provided the following guidelines in imposing discipline:
First, the judgment must be fair to society, both in terms of protecting the public from unethical conduct and at the same time not denying the public the services of a qualified lawyer as a result of undue harshness in imposing penalty. Second, the judgment must be fair to the respondent, being sufficient to punish a breach of ethics and at the same time encourage reformation and rehabilitation. Third, the judgment must be severe enough to deter others who might be prone or tempted to become involved in like violations.
Florida Bar v. Cibula, 725 So.2d 360, 363 (Fla.1998) (quoting Florida Bar v. Reed, 644 So.2d 1355, 1357 (Fla.1994)).
In Florida Bar v. Scott, 197 So.2d 518, 520 (Fla.1967) (quoting State ex rel. Florida Bar v. Dawson, 111 So.2d 427, 431 (Fla.1959)), this Court found that direct solicitation by a lawyer is a "serious breach[ ] of the Canon of Ethics demanding severe treatment of the offending lawyer." In State ex rel. Florida Bar v. Dawson, 111 So.2d 427, 431 (Fla.1959), this Court noted that in solicitation cases, "[t]he exact nature of the disciplinary action to be taken is a problem which must be resolved on the basis of the factual situation presented by each particular case." As a result, in the past the discipline imposed for improper attorney solicitation has varied from disbarment to public reprimand. See Florida Bar v. Weinstein, 624 So.2d 261 (Fla.1993) (disbarment); Florida Bar v. Stafford, 542 So.2d 1321 (Fla.1989) (six-month suspension); Florida Bar v. Sawyer, 420 So.2d 302 (Fla.1982) (eighteen-month suspension); Florida Bar v. Gaer, 380 So.2d 429 (Fla.1980) (public reprimand); Florida Bar v. Curry, 211 So.2d 169 (Fla.1968) (six-month suspension); Florida Bar v. Abramson, 199 So.2d 457 (Fla.1967) (public reprimand); Scott (six-month probation); Florida Bar v. Britton, 181 So.2d 161 (Fla.1965) (three-month suspension); State ex rel. Florida Bar v. Swidler, 159 So.2d 865 (Fla.1964) (public reprimand); State ex rel. Florida Bar v. Bieley, 120 So.2d 587 (Fla.1960) (six-month suspension); Dawson (eighteen-month suspension); State ex rel. Florida Bar v. Murrell, 74 So.2d 221 (Fla.1954) (one-year minimum suspension).
Despite the mitigating circumstances found to exist in the instant case, we agree with the Bar and conclude that a ninety-day suspension is too lenient for Wolfe's violations. In our view, the referee's recommendation is not supported by existing case law. We reach this conclusion for three reasons, and address each in turn.
First, Wolfe's primary explanation for his ethical violations is his long-term addiction to cocaine. This Court has held that while a substance abuse problem may explain misconduct, it does not excuse it. See Florida Bar v. Golub, 550 So.2d 455, 456 (Fla.1989). In addition, for drug abuse to serve as a mitigator, the addiction must impair the attorney's ability to practice law to such an extent that it outweighs the attorney's misconduct. In Florida Bar v. Shuminer, 567 So.2d 430, 431, 432 (Fla. 1990), an attorney with a substance abuse problem misappropriated client funds. The Court concluded that disbarment was a more appropriate sanction because, even though Shuminer had a substance abuse problem, he "failed to establish that his *645 addictions rose to a sufficient level of impairment to outweigh the seriousness of his offenses." Id. at 432. In so holding, this Court noted that Shuminer "continued to work effectively during the period in issue." Id.
According to Wolfe, his addiction intensified his need to "drum up" new business to feed his habit. For this reason, he entered two disaster areas and approached residents of the areas whose homes had been damaged by the tornadoes (and one resident whose husband had been killed), offering legal services. He presented the residents with prepared pamphlets and brochures, and offered the residents prepared contingency fee contracts. Such conduct indicates that Wolfe's conduct was not spontaneous or spur-of-the-moment; rather, it appears to have been carefully planned. As such, we conclude that Wolfe's in-person solicitation of clients, and his preparations in achieving this goal, do not demonstrate such a level of impairment that his cocaine addiction should serve as a substantial mitigator, or overshadow the seriousness of his violations, in assessing discipline in this case. See id.
The second reason for our conclusion that a ninety-day suspension is too lenient is predicated upon the concept that when an attorney affirmatively engages in conduct he or she knows to be improper, more severe discipline is warranted. In Stafford, 542 So.2d at 1323, the attorney admitted knowing that his solicitation of clients was wrong, but he continued to engage in the conduct anyway. This Court imposed a six-month suspension (rather than the referee's recommendation of a ninety-day suspension to be followed by a three-year probationary period), finding that the attorney's "blatant disregard of the prohibition against solicitation and his deliberate engagement in unethical fee splitting dictate the imposition of greater discipline." Id. At the hearing in the instant case, Wolfe gave the following testimony:
Q: You realized when you were up there that what you were doing was wrong?
A: Yes.
Q: Then why were you doing it?
A: Because I kept telling myself that well, it would be okay. I could get away with it.
(Tr. at 140). Thus, despite Wolfe's addiction, he comprehended the wrongfulness of his actions, and elected to invade the sanctity of an area ravaged by a catastrophe to solicit disaster victims without regard to dignity or decorum.
The third reason a suspension longer than ninety days is necessary here is founded on the principle that, in assessing discipline, "this Court also considers prior misconduct and cumulative misconduct as relevant factors, and `deals more severely with cumulative misconduct than with isolated misconduct.'" Florida Bar v. Adler, 589 So.2d 899, 900 (Fla.1991) (quoting Florida Bar v. Greenspahn, 386 So.2d 523, 525 (Fla.1980)). This is Wolfe's second disciplinary proceeding in the last three years. In 1997, this Court publicly reprimanded Wolfe for a trust account violation. See Florida Bar v. Wolfe, 693 So.2d 33 (Fla.1997). Further, in the instant case, Wolfe committed numerous violations, albeit in a short period of time, by soliciting clients in person, and by presenting them with flyers, brochures and contingency contracts which did not comply with the Rules Regulating the Florida Bar. We must note that we are especially concerned regarding Wolfe's contingency fee rule violations. These rules exist to inform potential clients of their rights, thereby protecting them from unethical conduct by attorneys or unconscionable terms in a contract for legal services. Wolfe disregarded these rules and his resulting actions not only took advantage of natural disaster victims at a vulnerable time, but also damaged the public's trust of attorneys as a whole. We cannot and *646 will not tolerate blatant disregard for the rules applicable to fee contracts.
Based on Wolfe's affirmative and intentional misconduct, his multiple offenses and his prior disciplinary record, a one-year suspension more adequately serves the goals of attorney discipline, those being respect for the legal system and protection of the public, than the referee's recommended ninety-day suspension. See Cibula, 725 So.2d at 363. Additionally, a three-year probationary period thereafter will assist Wolfe in continuing his recovery from his addiction and preventing a relapse.[3] Finally, we agree with and adopt all of the conditions of probation recommended by the referee in his report.
In imposing this discipline, we recognize that under Florida Standard for Imposing Lawyer Sanctions 9.32(j), interim rehabilitation may be considered as a mitigating factor. See Florida Bar v. Jahn, 509 So.2d 285, 287 (Fla.1987)(finding that "an addicted attorney who has demonstrated positive efforts to free himself of his drug dependency should have that fact recognized by the referee and this Court when considering the appropriate discipline to be imposed"). Further, we encourage attorneys with substance abuse problems to seek treatment for their addictions. See Florida Bar v. Temmer, 753 So.2d 555 (Fla.1999) (commending attorney on her efforts towards rehabilitation). We recognize substance abuse to be a disease process involving factors with great complexity. Although a one-year suspension is more severe than the discipline recommended by the referee, we emphasize that violations of the rules governing contingency contracts are not looked upon lightly by this Court and, had the mitigating factors found by the referee in this case not been present, we would have imposed much more severe discipline on Wolfe.

CONCLUSION
Accordingly, Evan Robert Wolfe is hereby suspended from the practice of law in Florida for one year, to be followed by a three-year probationary period. As part of his probation, Wolfe is required to continue his participation in the Florida Lawyer's Assistance, Inc., program, and complete his three-year contract with that organization. Wolfe is further required to be placed under the supervision of an attorney acceptable to the Bar for the first two years of his probation, and is required to take ten hours of ethics courses. Finally, for the duration of his probation, Wolfe is required to practice in a firm rather than as a sole practitioner.
Wolfe's suspension shall be effective thirty days from the filing of this opinion so that Wolfe can close out his practice and protect the interests of existing clients. If Wolfe notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Wolfe shall accept no new business from the date this opinion is filed until the suspension is completed. Judgment is entered for The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399, for recovery of costs from Evan Robert Wolfe in the amount of $5,301.12, for which sum let execution issue.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] The referee does not explain exactly who Rose Serrano is, but it appears that she was co-owner of a home with Thomas.
[2] The referee incorrectly cited this rule as 4-7.1(p).
[3] Under Florida Rule Regulating the Florida Bar 3-5.1(c), a set term of probation cannot be more than three years.