887 So.2d 1036 (2004)
THE FLORIDA BAR, Complainant,
v.
James Manuel HEPTNER, Respondent.
Nos. SC01-1298, SC02-1118.
Supreme Court of Florida.
September 15, 2004.
Rehearing Denied November 15, 2004.
*1037 John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Staff Counsel, Tallahassee, FL, and William Lance Thompson, Assistant Staff Counsel, Tampa, FL, for Complainant.
Scott K. Tozian of Smith and Tozian, P.A., Tampa, FL, for Respondent.
PER CURIAM.
We have for review a referee's report recommending that James Manuel Heptner be found guilty of professional misconduct and suspended from the practice of law for two years, effective, nunc pro tunc, July 3, 2002. We have jurisdiction. See art. V, § 15, Fla. Const. We approve the referee's findings of fact and recommendations as to guilt. However, for the reasons that follow, we disapprove the referee's recommended discipline and hereby disbar Heptner from the practice of law in Florida, effective, nunc pro tunc, July 3, 2002.

FACTS
By order of this Court dated March 29, 2001, Heptner was suspended from the practice of law for sixty days, effective April 30, 2001. See Florida Bar v. Heptner, 789 So.2d 350 (Fla.2001) (table report of unpublished order). In June 2001, the Bar filed a petition asking this Court to order Heptner to show cause why he should not be held in contempt and suspended from the practice of law, or disbarred, for practicing law while under an order of suspension. In October 2001, the Bar filed an amendment to the petition for order to show cause to include information not known at the time the initial petition was filed.[1] In May 2002, The Florida Bar filed a five-count complaint against Heptner. *1038 The referee consolidated the Bar's petition for order to show cause and the Bar's complaint. After holding hearings, the referee issued a report that adopted the facts as set forth in specified record documents. Those facts and the referee's recommendations are as follows.
Count I. Heptner, a member of The Florida Bar, was hired by a client to represent her in dissolution of marriage proceedings. However, Heptner failed to attend the scheduled family mediation. Shortly thereafter, the client informed Heptner by letter that she was dissatisfied with his representation and requested that he refund his fee. Heptner responded by meeting with her and discussing the mediated agreement. Thereafter, Heptner attended the final hearing, which resulted in a final judgment that was satisfactory to the client.
After the final dissolution of marriage was entered in March 1997, the client noticed that her requested name change was not in the original paperwork. Heptner told her that he would immediately file a motion to remedy this problem. However, despite the client's several communications with Heptner about completing the name change, he failed to file the necessary petition until October 1997. Heptner then failed to adequately prepare her for the subsequent hearing. Because the client was unable to answer the judge's questions, she was not able to receive her name change until December 1997.
In March 1998, the client filed a complaint against Heptner. The Bar sent Heptner an inquiry letter on March 19, 1998, regarding the complaint. In the letter, the Bar advised Heptner that a response was required within fifteen days pursuant to rule 4-8.4(g) of the Rules Regulating the Florida Bar. Heptner failed to answer the Bar's letter at that time. On April 15, 1998, the Bar sent Heptner a second letter, which also required a response within fifteen days. Heptner did not respond to the Bar's letters until August 1998, and also failed to respond to a letter from the grievance committee.
Count II. In March 2000, the Bar received a complaint from another client.[2] Heptner failed to respond to two letters from the Bar asking him to respond to the client's complaint within fifteen days. Heptner also failed to provide requested information to the grievance committee investigating member.
Count III. Heptner represented another client in a personal injury claim arising out of an automobile accident. On July 30, 1999, the claim was settled with the defendant's insurance company, Safeco, for $9000. On August 2, 1999, the claims adjuster for Safeco mailed a $9000 settlement check to Heptner, enclosing a release and indemnity agreement to be signed by the client and returned to Safeco. Safeco made the client's signing of the release a condition of the client's receipt of the settlement funds. Heptner endorsed the settlement check and disbursed the client's portion of the settlement funds to the client, but Heptner failed to provide Safeco with the signed release. Representatives of Safeco made numerous attempts to contact Heptner, by telephone and by correspondence, to obtain the executed release. Heptner failed to respond, and he never provided Safeco with a release signed by his client. In March 2001, Safeco filed a grievance against Heptner. Heptner failed to respond to two letters from the Bar requesting his response to Safeco's complaint within fifteen days. Heptner did not respond to the Bar until June 2001.
*1039 Count IV. The Bar received a complaint from yet another client against Heptner.[3] On May 30, 2001, the Bar sent Heptner a letter asking him to respond to the client's complaint within fifteen days. Heptner did not respond until around June 26, 2001.
Count V of the Complaint, the Petition for Order to Show Cause, and the Amendment to the Petition for Order to Show Cause. Heptner has been prohibited from practicing law in Florida since October 31, 2000, because he failed to comply with continuing legal education requirements. Further, Heptner was suspended by this Court in Florida Bar v. Heptner, 789 So.2d 350 (Fla.2001), for sixty days, effective April 30, 2001.
On April 12, 2001, the Bar sent Heptner a letter informing him that, pursuant to rule 3-5.1(g) of the Rules Regulating the Florida Bar, he was required to submit an affidavit verifying that he had furnished a copy of the suspension order to his active clients, to opposing counsel, and to all courts before which he was counsel of record, within thirty days of receipt of the order. Heptner was also informed that he was required to "eliminate the appearance of being a lawyer in good standing," which included removal of his office signs. Heptner failed to submit the affidavit required by rule 3-5.1(g) within thirty days. In fact, Heptner did not respond to the Bar's letter until after the Bar petitioned this Court on June 13, 2001, for an order compelling Heptner to show cause why he should not be disbarred. Heptner finally responded to the Bar on June 28, 2001, and submitted the affidavit required by rule 3-5.1(g), which stated that he had furnished a copy of the suspension order to all clients and included a list of their names and addresses. However, the list did not include the names of at least two clients.
Despite the Bar's April 2001 letter, Heptner continued to represent a client in a dissolution of marriage case. On May 14, 2001, Heptner was scheduled to appear for a circuit court case management conference for the client. Because neither Heptner nor his client appeared for the conference, the court dismissed the case. On May 15, 2001, Heptner appeared in the judge's chambers and stated that he had mistakenly thought the conference was scheduled for May 15. The judge said he would consider a motion for rehearing. Heptner did not mention to the judge or the judicial assistant that he was suspended. Further, Heptner contacted the client on May 15 and advised him that the court hearing was rescheduled for August 2001.
On May 24, 2001, Heptner again appeared in the judge's chambers and filed an "Emergency Motion for Rehearing or to Reinstate Case" and a "Notice of Rehearing." Although the motion and notice were signed by Mr. Treuhaft, an attorney who shared office space with Heptner, the documents included Heptner's name and bar number. At that point, the judge recalled seeing Heptner's name on a list of suspended attorneys.
The court, on its own motion, entered an order to vacate or set aside the order of dismissal. Among other things, the order stated that (1) Heptner informed the judicial assistant that he represented the client; and (2) the client called the judicial assistant and informed her that Heptner had told him that Heptner had appeared before the judge on May 14 and had the case management conference rescheduled. Thus, the record indicates that Heptner did not inform the client that he was suspended until after the client learned that *1040 the case had been dismissed. Heptner then told the client that he had filed a motion to reinstate the case and that the client should seek new counsel. By adopting the facts in the record, the referee found that Heptner engaged in the practice of law during his suspension by (1) continuing to represent the client; (2) filing a motion and notice of rehearing; (3) misrepresenting to the client that he appeared at the case management conference on May 14, 2001; and (4) implying that he could continue to represent the client through the final hearing scheduled for August 2001.
Next, through an undercover narcotics trafficking investigation and telephone wiretap, Heptner had been recorded soliciting the delivery of cocaine from another client in two phone conversations. The conversations took place in May 2001, while Heptner was suspended. Further, Heptner had purchased cocaine from the client on a regular basis over an eighteen-month period and, at Heptner's suggestion, the client had also provided Heptner with cocaine in exchange for legal services. During Heptner's suspension from the practice of law, he continued to provide legal advice to the client regarding his dissolution of marriage case.
On July 18, 2001, the client wore an audio recording device during a meeting in Heptner's office. During that meeting, Heptner again solicited the delivery of cocaine from the client. Heptner was arrested and charged with a violation of section 893.13(1)(a), Florida Statutes (2000), solicitation to deliver cocaine, which is a third-degree felony.
On August 20, 2001, the Bar sent Heptner a letter inquiring about his arrest for the solicitation of cocaine. Heptner failed to respond to the Bar within fifteen days. His response was received by the Bar on November 6, 2001.
The referee found that Heptner admitted the allegations in Counts I, II, III, and IV of the complaint, and that the Bar proved by clear and convincing evidence the allegations in Count V. The referee also found that the Bar proved the allegations in the petition for order to show cause and the amendment to the petition. The referee recommended that Heptner be found guilty of violating the following Rules Regulating the Florida Bar: rule 4-1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client); rule 4-1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information); rule 4-1.4(b) (a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation); rule 4-8.4(g) (a lawyer shall not fail to respond, in writing, to any official inquiry by bar counsel or a disciplinary agency when bar counsel or the agency is conducting an investigation into the lawyer's conduct); rule 3-4.4 (criminal misconduct); rule 4-8.4(b) (a lawyer shall not commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects); rule 4-1.16(a)(1) (a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if the representation will result in violation of the Rules of Professional Conduct); and rule 3-5.1(g) (when suspended, a lawyer shall notify his clients and the courts where he is listed as attorney of record). The referee also found Heptner guilty of contempt for intentionally violating the terms of an order of suspension and by engaging in the practice of law while suspended.
As to aggravating factors, the referee found that Heptner had (1) four prior disciplinary *1041 offenses;[4] (2) substantial experience in the practice of law; and (3) engaged in a pattern of misconduct. In mitigation the referee found: (1) absence of a dishonest or selfish motive; (2) personal or emotional problems; (3) character or reputation; (4) physical or mental disability or impairment; (5) interim rehabilitation; and (6) remorse.
As to discipline, the referee recommended that Heptner be suspended from the practice of law for two years, effective, nunc pro tunc, July 3, 2002, the date of Heptner's most recent disciplinary sanction imposing a ninety-one-day suspension, see Florida Bar v. Heptner, 823 So.2d 126 (Fla.2002) (table report of unpublished order), followed by two years of probation. The referee stated, "But for the Respondent's successful completion of residential treatment and counseling, successful completion of the Pretrial Intervention Program, and the fact that he is currently doing well with his aftercare, the Respondent's disciplinary history would have warranted disbarment."[5] The referee did not cite any case law in support of his recommendation.
The Bar petitioned this Court for review of the referee's report, arguing that disbarment is the appropriate discipline. The Court held oral argument in this case on June 10, 2004.

ANALYSIS
As a preliminary matter, neither Heptner nor the Bar contests the referee's findings of fact or recommendations as to guilt. Therefore, we approve those findings and recommendations. However, we agree with the Bar that the referee's recommended discipline of a retroactive two-year suspension is not appropriate in this case.
In reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because ultimately it is the Court's responsibility to order the appropriate sanction. See Florida Bar *1042 v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also art. V, § 15, Fla. Const. However, this Court will not generally second-guess the referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Florida Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999). In the instant case, we note that the referee did not cite to case law or the standards in recommending a retroactive two-year suspension.
Heptner argues that the Court should affirm the referee's recommended discipline and that disbarment is not appropriate because during the time at issue he was operating under a drug addiction that affected his judgment. Heptner claims that the drug impairment caused him to neglect legal matters and fail to comply with this Court's previous suspension order. He alleges that there are numerous cases in which attorneys were found guilty of drug use, but were not disbarred. Further, he claims that disbarment is not warranted based on his continuing efforts towards rehabilitation, which include ongoing drug treatment and counseling.[6] However, Heptner committed serious acts of misconduct. First, he engaged in felony criminal conduct with a client, involving the sale and use of cocaine. Second, he continued to practice law while suspended and, thus, intentionally violated an order of this Court. Third, Heptner has engaged in multiple acts of misconduct over an extended period of time. Case law indicates that such misconduct merits disbarment.
In Florida Bar v. Beasley, 351 So.2d 959 (Fla.1977), respondent attorney Beasley instructed a client to contact a third party who could supply the client with illegal drugs. The client purchased approximately four pounds of marijuana from that contact. Subsequently, Beasley was found guilty of delivery of cannabis. The referee recommended a two-year suspension. This Court disagreed with the referee's recommendation and disbarred Beasley for his misconduct, stating that "a lawyer who is willing to forsake his client for his own personal goals demonstrates a lack of moral character and fitness required of a member of the Bar." Id. at 960.
Similarly, in Florida Bar v. Wilson, 425 So.2d 2 (Fla.1983), respondent attorney Wilson pressured an incarcerated client to arrange for the delivery of one and one-half pounds of cocaine to the respondent. For this act, Wilson was convicted of two felonies, solicitation to traffic in cocaine and attempted trafficking in cocaine. The referee recommended that Wilson be suspended for three years. However, the *1043 Court disbarred him, stating that because he violated his oath and flagrantly breached the confidence reposed in him as an officer of the court, he could no longer enjoy the privilege of being a member of the Bar. Id. at 4.
Although both Beasley and Wilson involved large amounts of illegal drugs, they are similar to the instant case. Heptner, like Beasley and Wilson, involved his client in felonious activities when Heptner asked his client to supply him with cocaine. Also, similar to Wilson, Heptner violated his oath as an attorney when he asked his client to supply him with cocaine and, further, agreed to provide legal services in exchange for cocaine. Thus, these cases support our conclusion that disbarment is the appropriate sanction in the instant case.
Heptner cites several cases that he contends support his position that suspension is the appropriate sanction for the personal use of drugs when mitigating factors are present. See Florida Bar v. Jahn, 509 So.2d 285 (Fla.1987) (three-year suspension for drug-addicted attorney who injected himself and two minor females with cocaine); Florida Bar v. Rosen, 495 So.2d 180 (Fla.1986) (three-year suspension for drug-addicted attorney who was adjudicated guilty of federal felony charges of knowingly and intentionally possessing cocaine with intent to distribute). In Rosen, the Court referred to the respondent's case as a "tragedy." 495 So.2d at 181. Rosen had graduated magna cum laude with a bachelor's degree in business administration. He became a CPA, and then went on to graduate second in his class from law school. He specialized in tax matters, had an excellent reputation in the community, and authored numerous articles and a book for The Florida Bar. However, as he became increasingly addicted to free-base cocaine, he wound up his law practice because "he no longer felt able to adequately protect the best interests of his clients." Id. In both Jahn and Rosen, the respondents were identified as drug addicts.
Heptner suggests that he is like the attorneys in Jahn and Rosen, and alleges that he was not able to control his behavior due to his cocaine addiction. Heptner attributes his multiple rule violations and misconduct to his impaired judgment. However, the facts of the instant case do not compare favorably with the evidence in Rosen. Further, this Court has held that before drug abuse may serve as a mitigator, "the addiction must impair the attorney's ability to practice law to such an extent that it outweighs the attorney's misconduct." Florida Bar v. Wolfe, 759 So.2d 639, 644 (Fla.2000); see also Florida Bar v. Shuminer, 567 So.2d 430, 432 (Fla.1990) (disbarring an attorney with a substance abuse problem who misappropriated client funds because he "failed to establish that his addictions rose to a sufficient level of impairment to outweigh the seriousness of his offenses"). In the instant case, the referee found that Heptner had personal or emotional problems and a "physical or mental disability or impairment," but the referee did not identify Heptner as a drug addict. Further, although the referee stated that Heptner should receive two years of probation to ensure that he successfully completes his substance abuse treatment and counseling, the referee did not make any findings that specifically indicate Heptner's use of drugs was due to an addiction rather than merely a recreational activity. The referee also did not make a specific finding that Heptner's illegal drug use was the cause of his misconduct. Although one expert testified that Heptner's chemical abuse and "situational *1044 depression"[7] problems might have caused him to fail to open letters that were sent to him, behavior which was identified as the "not-opening-the-mail syndrome," the expert was speaking broadly about an inability to open all mail. On cross-examination, when the expert was informed that Heptner did not open mail sent to him by the Bar but was able to maintain a successful practice and rarely missed a court date, the expert responded that Heptner's actions were not consistent with the "not-opening-the-mail syndrome." Further, the record indicates that Heptner engaged in the intermittent use of cocaine while maintaining a successful practice. Attorney Truehaft, who shared office space with Heptner, previously testified in December 2001 that he was not even aware that Heptner had a drug problem until he was arrested. Similarly, Heptner never raised the issue of drug addiction in his previous disciplinary cases. It was not until he was arrested for the illegal drug transaction that Heptner began claiming that he was addicted to cocaine.
Truehaft also stated in the previous proceeding that he had the opportunity to observe Heptner practicing law on close to 200 occasions and that he had a very high regard for Heptner's abilities. In the instant proceeding, Heptner agreed that Truehaft made those statements and Heptner did not dispute their accuracy. Further, Heptner even testified that he was a "periodic user" of cocaine and would go as long as a month without the drug. The Bar presented evidence that Heptner completed health care paperwork which stated that he used cocaine "as stress relief and to party, meet girls, friends and fun." The record also demonstrates that Heptner previously stated that he had an eighteen-month period of sobriety. Heptner's statements regarding his use of cocaine indicate that he had some control over his use of the drug and that he was a recreational user. Thus, we conclude that Jahn and Rosen do not support the referee's recommended two-year suspension in this case. Further, we conclude that Heptner has failed to establish that his periodic use of cocaine was due to an addiction and that such use rose to a sufficient level to impair his ability to practice law. Thus, his use of cocaine did not "overshadow the seriousness of his violations[ ] in assessing discipline in this case." Wolfe, 759 So.2d at 645.
Heptner also cites other cases to support his argument that his cocaine-related misconduct does not merit disbarment. However, those cases are distinguishable because they do not reflect the totality of the circumstances present in the instant case. For example, Heptner relies upon Florida Bar v. Weintraub, 528 So.2d 367 (Fla.1988), in which an attorney was suspended for ninety days after pleading nolo contendere to a criminal charge of delivery of cocaine. Weintraub had delivered one-half gram of cocaine to a neighbor, with whom he was romantically involved. However, Weintraub had no prior disciplinary record, and the case does not indicate any client involvement. In comparison, the instant case has several additional factors that distinguish it from Heptner's cited cases, specifically that (1) Heptner involved his client in his felony misconduct; *1045 (2) Heptner violated an order of suspension by engaging in the practice of law, by holding himself out as a lawyer, and by failing to notify his clients of his suspension; (3) Heptner has been disciplined on four prior occasions; and (4) Heptner committed multiple rule violations. Thus, we conclude that Weintraub and the other cases cited by Heptner do not support the referee's recommended discipline.
Further, this Court has disbarred attorneys for continuing to practice law during their suspensions. See Florida Bar v. Rood, 678 So.2d 1277 (Fla.1996); Florida Bar v. Greene, 589 So.2d 281 (Fla.1991); Florida Bar v. Jones, 571 So.2d 426 (Fla.1990). Heptner disregarded an order of suspension from this Court by continuing to represent a client before a judge while he was suspended. Thus, based solely on Heptner's disregard of this Court's order of suspension, disbarment is an appropriate sanction.
Moreover, in rendering discipline, this Court considers the respondent's previous disciplinary history and increases the discipline where appropriate for cumulative misconduct. See Florida Bar v. Bern, 425 So.2d 526, 528 (Fla.1982). Thus, the Court deals more harshly with cumulative misconduct than it does with isolated misconduct. See id. Heptner has a significant history of disciplinary sanctions. The instant consolidated case is the fifth time he has been disciplined since 1990. Previously, Heptner received a private reprimand, a public reprimand with eighteen months' probation, a sixty-day suspension, and a ninety-one-day suspension followed by two years of probation. Some of Heptner's previous disciplinary cases involved several clients. Further, the instant case involves five different clients. Thus, Heptner has been violating the rules for over ten years, while injuring numerous clients. Such a disciplinary history indicates that Heptner merits a significant sanction due to his cumulative misconduct. An attorney who practices law in this manner is a danger to his clients and the public, and should be disbarred before causing further harm.
Thus, we conclude that the referee's recommended discipline of a two-year suspension does not have a reasonable basis of support in existing case law. Heptner involved his client in his felonious activities regarding cocaine. Also, he continued to practice law while suspended which, on its own, indicates that disbarment is the appropriate sanction. Further, Heptner has a noteworthy disciplinary history. He is also guilty of contempt and of violating several rules. While we are sympathetic to Heptner's subsequent attempts at drug rehabilitation, the totality of the circumstances indicates that disbarment is the appropriate disciplinary sanction.

CONCLUSION
Accordingly, James Manuel Heptner is hereby disbarred from the practice of law in Florida, effective, nunc pro tunc, July 3, 2002. Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida XXXXX-XXXX, for recovery of costs from James Manuel Heptner in the amount of $7,446.87, for which sum let execution issue.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Heptner was arrested on August 6, 2001, and charged with soliciting the purchase of cocaine from a client. At the time of the alleged offense, Heptner was under suspension by the Bar for failing to meet his continuing legal education requirements. These events will be discussed in Count V.
[2] The record does not provide details regarding this complaint.
[3] The record does not provide details regarding this complaint.
[4] Heptner's prior disciplinary offenses include: (1) an admonishment by a grievance committee for neglect of a legal matter and trust accounting violations, see R. Reg. Fla. Bar 3-5.1(a); (2) a public reprimand and eighteen months' probation for failing to properly supervise a nonlawyer employee, failing to explain a matter to a client to the extent reasonably necessary to permit the client to make an informed decision regarding the representation, accepting an impermissible fee, failing to provide competent and diligent representation, and failing to reasonably communicate with a client regarding the status of a legal matter, see Florida Bar v. Heptner, 637 So.2d 238 (Fla.1994) (table report of unpublished order); (3) a sixty-day suspension for failing to provide competent representation, failing to act with reasonable diligence, failing to explain a matter to a client, and failing to respond in writing to an official inquiry, see Florida Bar v. Heptner, 789 So.2d 350 (Fla.2001) (table report of unpublished order); and (4) a ninety-one-day suspension followed by two years of probation for failing to respond in writing to an official bar inquiry. See Florida Bar v. Heptner, 823 So.2d 126 (Fla.2002) (table report of unpublished order).
[5] The record indicates that Heptner has participated in a drug rehabilitation program and in therapy. In September 2001, after his arrest, Heptner voluntarily entered a residential drug rehabilitation program and remained there for five months. Heptner subsequently signed an eighteen-month contract to enter into the Drug Court Pre-Trial Intervention Program. He entered the program on March 4, 2002. While he was in the program, Heptner received treatment through the Drug Abuse Comprehensive Coordinating Office, a substance abuse treatment program. Based on positive recommendations, the court terminated Heptner's supervision approximately six months early on February 25, 2003. On April 3, 2003, Heptner signed a three-year rehabilitation contract with Florida Lawyers' Assistance, Inc. (FLA).
[6] Heptner makes a brief argument that the referee's recommended disciplinary sanction of a retroactive two-year suspension is supported by the Florida Standards for Imposing Lawyer Sanctions. He cites standard 12.1(a), which states that a factor that "may be considered in aggravation" is the attorney's "[i]nvolvement of a client in the misconduct, irrespective of actual harm to the client." Heptner argues that pursuant to this standard, his misconduct of involving his client in his illegal drug use can only be considered as an aggravating factor and should not result in "automatic disbarment." However, Heptner overlooks the other factors present in his case that indicate disbarment is appropriate, such as his continued engagement in the practice of law despite this Court's order of suspension.

Heptner also cites standard 10.3, which states that "[a]bsent the existence of aggravating factors," a suspension of ninety or ninety-one days is appropriate for an attorney who has been found guilty of felonious conduct involving the personal use or possession of a controlled substance, and who has sought and obtained assistance from FLA, Inc. or a treatment program. In relying on this standard, Heptner ignores the fact that in his case the referee found several aggravating factors, including that Heptner has a significant disciplinary history.
[7] The expert testified that in his opinion there is a difference between "situational depression" and a psychiatric assessment resulting in a clinical diagnosis of "major depression." Situational depression is expected to alleviate itself once the suffering person starts on the path to recovery from chemical abuse. In comparison, major depression is independent from the chemical abuse and requires separate treatment. On cross-examination, the expert testified that Heptner's "psychiatric assessment resulted in no diagnosis of major depression."