# Supreme Court of Florida

_____

No. SC15-1305
_____

**THE FLORIDA BAR**, Complainant,

vs.

**ARTURO DOPAZO, III**, Respondent.

[October 5, 2017]

PER CURIAM.

We have for review a referee's report recommending that Respondent, Arturo Dopazo, III, be found guilty of professional misconduct in violation of the Rules Regulating the Florida Bar (Bar Rules) and suspended from the practice of law for sixty days. We have jurisdiction. <u>See</u> art. V, § 15, Fla. Const. We approve the referee's findings of fact and recommendation as to guilt. However, as discussed below, we disapprove the referee's recommended sanction and instead suspend Dopazo from the practice of law for one year.

# FACTS

In July 2015, The Florida Bar filed a complaint against Dopazo, alleging that he engaged in misconduct in violation of the Bar Rules. The Bar made two distinct claims in its Complaint. First, the Bar alleged Dopazo participated in a patient-client recruiting scheme orchestrated by a nonlawyer, in which Dopazo obtained clients and paid the nonlawyer for those client referrals. Second, the Bar alleged Dopazo either directly himself or through an employee or agent knowingly solicited Penny Jones, the mother of a brain-injured child at the hospital, while the child was in a coma. A referee was appointed to consider the matter. Following a hearing, the referee submitted his report, in which he made the following findings and recommendation.

On December 22, 2011, after a federal trial on the matter concluded, the Federal Bureau of Investigation sent the Bar materials concerning the investigation and subsequent indictment of two nonlawyers for their involvement in an illegal patient-client recruiting scheme with medical clinics involving local lawyers. After reviewing those materials, the Bar suspected Dopazo to have been involved in the scheme and to have paid for client referrals. At the final hearing, the Bar presented evidence that Dopazo provided thirty-one payments to Miami-Dade Services, Inc., suggesting Dopazo made these payments as part of the scheme to receive potential client information. Dopazo acknowledged the payments but

explained they were made on letters of protection for healthcare services furnished to his clients at the medical clinics. The Bar admitted there was no "smoking gun" to directly support its allegation that Dopazo was involved in the patient-client recruiting scheme.

In March 2007, days after her son suffered traumatic brain injury as the result of a motor vehicle injury, Penny Jones was approached at Jackson Memorial Hospital Ryder Trauma Center by Dopazo, who successfully solicited her to become a client of his for a fee. There was no prior relationship between Jones and Dopazo, nor were his legal services sought by her or anyone acting on her behalf. The referee found that Dopazo's appearance at the hospital was completely unexpected, and while she did apparently retain his services at that time, Jones' limited education and fragile emotional condition at the time likely rendered her unable to make a rational decision whether to retain counsel or reject Dopazo's efforts to sign her up as a client. In defense of his actions, Dopazo claimed that his office called him and told him to go see Jones in the hospital intensive care unit; however, the referee found that this explanation was insufficient.

The referee found that the Bar lacked clear and convincing evidence that Dopazo was involved in the patient-client recruiting scheme. However, the referee did find that Dopazo solicited Jones in March 2007. The referee recommends that Dopazo be found guilty of violating Bar Rule 4-7.18 (Direct Contact with

Prospective Clients). While the referee does not explicitly identify the aggravating or mitigating factors, it appears he found as aggravating factors (1) Dopazo's prior disciplinary offense of solicitation and (2) the vulnerability of Jones, and found as mitigating factors (1) unreasonable delay in disciplinary proceedings, to which Dopazo did not substantially contribute and from which Dopazo suffered prejudice, and (2) character or reputation.

Based on his findings of fact, recommendation as to guilt, and the aggravating and mitigating factors, the referee recommends that Dopazo be suspended from the practice of law for sixty days and that he be ordered to pay the Bar apportioned costs because it was only partially successful in proving the charges by clear and convincing evidence. Dopazo seeks review of the referee's recommendation of guilt. The Bar seeks cross-review of the referee's recommended sanction of a sixty-day suspension.

## ANALYSIS

Dopazo challenges the referee's recommendation that he be found guilty of violating Bar Rule 4-7.18. To the extent he challenges the referee's findings of fact for the rule violation, the Court's review of such matters is limited, and if a referee's findings of fact are supported by competent, substantial evidence in the record, this Court will not reweigh the evidence and substitute its judgment for that of the referee. Fla. Bar v. Frederick, 756 So. 2d 79, 86 (Fla. 2000); see Fla. Bar v.

- 4 -

Jordan, 705 So. 2d 1387, 1390 (Fla. 1998). To the extent Dopazo challenges the recommendation as to guilt, the Court has repeatedly stated that the referee's factual findings must be sufficient under the applicable rules to support the recommendations as to guilt. See Fla. Bar v. Shoureas, 913 So. 2d 554, 557-58 (Fla. 2005). The party challenging the referee's findings of fact and conclusion as to guilt has the burden to demonstrate that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions. Fla. Bar v. Germain, 957 So. 2d 613, 620 (Fla. 2007).

Dopazo argues Jones' testimony is not credible because of several discrepancies in her testimony throughout the investigation. Jones informed FBI investigators that the individual at the hospital had dark blonde hair and that the person who approached her in the hospital stated he represented Dopazo but was not actually Dopazo himself. At the final hearing, Jones testified that Dopazo himself approached her in the hospital and admitted her testimony had changed throughout the course of the investigation from 2009 until 2016, but repeatedly stated she remembered the best she could given the traumatic experience with her son and how long ago it occurred.

The record reflects Jones testified that she did not request a lawyer while she was in the intensive care unit with her son, did not request anyone else to find her a lawyer, did not have anyone contact Dopazo's office on her behalf, was not

looking for a lawyer, and had no personal relationship with Dopazo before the encounter at the hospital. Jones also testified that she was approached by Dopazo at the hospital, met him two or three times at the hospital, and later went to his office to pick up her settlement check, where she briefly saw him again. She also identified Dopazo in the courtroom as the individual who approached her in the hospital.

Because "the referee is in a unique position to assess witness credibility, this Court will not overturn his judgment absent clear and convincing evidence." Germain, 957 So. 2d at 621; Fla. Bar v. Batista, 846 So. 2d 479, 483 (Fla. 2003). After hearing testimony from several witnesses, the referee found Jones to be a credible witness and accepted her testimony over Dopazo's testimony. The record also supports the referee's factual findings, as Jones testified directly to the issue of solicitation in the final hearing. While Jones' testimony appears to be inconsistent as to some facts, Jones consistently maintained that she did not contact Dopazo or request anyone she knew to contact Dopazo on her behalf for legal representation. Thus, the referee inherently found this testimony credible over Dopazo's testimony and found that Dopazo directly solicited Jones, in violation of Bar Rule 4-7.18.

Accordingly, because the referee was in the best position to judge the demeanor of the witnesses and their sincerity during the final hearing, and because

the record evidence supports the referee's factual findings, we approve the referee's findings of fact and recommendation as to guilt.

Next, the Bar asks the Court to find one additional aggravating factor and disapprove of the referee's findings as to one mitigating factor. Dopazo suggests the referee should have found one additional mitigating factor. "[A] referee's findings of mitigation and aggravation carry a presumption of correctness and will be upheld unless clearly erroneous or without support in the record. A referee's failure to find that an aggravating factor or mitigating factor applies is due the same deference." Germain, 957 So. 2d at 621 (internal citation omitted).

First, the Bar suggests the referee should have found that Dopazo had a selfish motive as an aggravating factor. Here, the referee carefully weighed the evidence presented at trial. Because there was not testimony in the record pertaining to this aggravating factor, the referee's failure to find this aggravating factor is not clearly erroneous. Second, the Bar challenges the referee's finding of the mitigating factor of unreasonable delay in the disciplinary proceedings. In this case, the solicitation incident occurred sometime between March 28, 2007, and April 4, 2007. The Bar learned of Dopazo's possible solicitation of Jones on December 20, 2011, when the FBI turned over interview forms to the Bar after the Rodriguez federal patient-client scheme trial had concluded. On April 18, 2012, the Bar sent its first inquiry letter to Dopazo, and on July 15, 2015, the Bar filed its

complaint against Dopazo. The final hearing occurred from April 4, 2016, through April 6, 2016. The Bar argues it did not contribute to the delay, as it had no way of knowing about the possible solicitation of Jones until the FBI turned over its findings in December 2011, and the Bar acted promptly in sending an inquiry within four months after receiving the FBI materials. Nonetheless, a formal complaint was not filed until July 2015, more than eight years from the incident in question. At the final hearing in 2016, testimony showed that witnesses' memories had faded due to the time lapse between the incident nine years prior and the final hearing. Thus, the referee's finding on this mitigating factor is not clearly erroneous.

Dopazo argues the referee should have found as a mitigating factor the remoteness of his prior offense. Dopazo entered a consent judgment to a public reprimand for solicitation on August 24, 2004, for conduct that occurred in 2002. The solicitation of Jones occurred in March or April 2007, which was not even three years after the consent judgment for solicitation. Thus, at the time Dopazo solicited Jones, his public reprimand should have been fresh in his mind, especially because he committed the same rule violation of solicitation a second time. See Germain, 957 So. 2d at 622 (finding the mitigating factor remoteness of prior offense did not apply because the previous disciplinary case was resolved only three years before the misconduct spurring the later disciplinary case, even when

this Court entered its final disposition of the case nearly six years later). Additionally, the rule violation in Dopazo's prior disciplinary case is the same as the rule violation in the instant case, so the remoteness of prior offense is less relevant. See Fla. Bar v. Varner, 992 So. 2d 224, 230 (Fla. 2008) (referee properly did not find remoteness of prior disciplinary history as a mitigating factor because the facts of the most recent 2001 disciplinary case were very similar to the present case). Therefore, the referee's failure to find remoteness of the prior offense was not clearly erroneous. Accordingly, we approve the referee's findings of aggravating and mitigating factors in full.

We now turn to the referee's recommended sanction, a sixty-day suspension. The Bar urges the Court to disapprove this sanction and impose a two-year suspension. In reviewing a referee's recommended discipline, the Court's scope of review is broader than that afforded to the referee's findings of fact because, ultimately, it is the Court's responsibility to order the appropriate sanction. See Fla. Bar v. Anderson, 538 So. 2d 852, 854 (Fla. 1989); see also art. V, § 15, Fla. Const. At the same time, the Court will generally not second-guess the referee's recommended discipline, as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So. 2d 555, 558 (Fla. 1999).

The Florida Standards for Imposing Lawyer Sanctions (Standards) support suspension as a sanction for unethical solicitation. See Fla. Stds. Imposing Law. Sancs. 7.2. Additionally, Standard 8.2 provides that when a lawyer previously has been "publicly reprimanded for the same or similar conduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession," suspension is appropriate. Because Dopazo received a public reprimand for solicitation in 2004, the Standards support a suspension in this case.

In cases involving unethical solicitation of clients, this Court has imposed a range of sanctions depending on the specific facts of each case. Fla. Bar v. Barrett, 897 So. 2d 1269, 1276 (Fla. 2005); see Fla. Bar v. Wolfe, 759 So. 2d 639, 646 (Fla. 2000) (one-year suspension); Fla. Bar v. Weinstein, 624 So. 2d 261, 262 (Fla. 1993) (disbarment); Fla. Bar v. Stafford, 542 So. 2d 1321, 1323 (Fla. 1989) (six-month suspension); Fla. Bar v. Sawyer, 420 So. 2d 302, 303 (Fla. 1982) (eighteen-month suspension); Fla. Bar v. Gaer, 380 So. 2d 429, 430 (Fla. 1980) (public reprimand).

Here, case law supports the Bar's assertion that the referee's recommended sanction of a sixty-day suspension is too lenient. In Weinstein, this Court disbarred a lawyer who solicited a stranger who was hospitalized with brain damage after a motorcycle accident when the lawyer also committed a series of lies

to execute the solicitation. 624 So. 2d at 261-62. In <u>Wolfe</u>, this Court suspended a lawyer for one year when he solicited clients door to door after a series of tornadoes struck several counties in Florida, damaging homes and killing or injuring a large number of people. 759 So. 2d at 640. Similar to the victims in <u>Weinstein</u> and <u>Wolfe</u>, Jones was a vulnerable victim; she was consumed by her emotions and lacked a clear mind to consider hiring a lawyer because her son was in a critical condition after a brain injury from an accident. The solicitation rule exists to protect potential clients from this very situation in which lawyers act unethically to take advantage of potential clients, casting distrust on the legal profession as a whole. <u>Wolfe</u>, 759 So. 2d at 645.

In cases where the lawyer has been previously disciplined for engaging in conduct of a similar nature, this Court typically takes an incremental approach in imposing discipline, increasing the severity of discipline in each instance. See <u>Fla. Bar v. Norkin</u>, 132 So. 3d 77, 92 (Fla. 2013); <u>Fla. Bar v. Morgan</u>, 938 So. 2d 496, 499-500 (Fla. 2006). Dopazo previously received a public reprimand for solicitation in 2004, and he has committed the same rule violation a second time by soliciting Jones in this case. Therefore, a more severe sanction is warranted because Dopazo committed the same conduct for which he was previously disciplined. Further, "the Court has moved toward imposing stronger sanctions for

unethical and unprofessional conduct" to protect the legal profession from dishonor and disgrace. Fla. Bar v. Rosenberg, 169 So. 3d 1155, 1162 (Fla. 2015).

Unethical violations of the solicitation rule, such as the ones committed by Dopazo in this case, have the potential to harm people who are already in a vulnerable condition and bring dishonor and disgrace on the entire legal profession. This Court will not tolerate these improper solicitations and will "impose severe sanctions on those who commit violations of them." Barrett, 897 So. 2d at 1277. Therefore, we conclude that a one-year suspension from the practice of law is warranted in this case.

**CONCLUSION**

We approve the referee's findings of fact and recommendation as to guilt, but disapprove the referee's recommended sanction of a sixty-day suspension and instead impose a one-year suspension. Accordingly, Arturo Dopazo, III, is hereby suspended from the practice of law for one year. The suspension will be effective thirty days from the filing of this opinion so that Dopazo can close out his practice and protect the interests of existing clients. If Dopazo notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Dopazo shall fully comply with Rule Regulating the Florida Bar 3-5.1(h). Further,

Dopazo shall accept no new business from the date this opinion is filed until he is reinstated.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Arturo Dopazo, III, in the amount of $6,769.35, for which sum let execution issue.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, POLSTON, and LAWSON, JJ., concur.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS SUSPENSION.

Original Proceeding – The Florida Bar

John F. Harkness, Jr., Executive Director, The Florida Bar, Tallahassee, Florida, Adria E. Quintela, Staff Counsel, The Florida Bar, Sunrise, Florida, and Patrick Russell, Bar Counsel, The Florida Bar, Miami, Florida,

for Complainant

Andrew S. Berman of Young, Berman, Karpf & Gonzalez, P.A., Miami, Florida,

for Respondent