946 So.2d 977 (2006)
THE FLORIDA BAR, Complainant,
v.
Gerald John D'AMBROSIO, Respondent.
No. SC04-922.
Supreme Court of Florida.
October 19, 2006.
*978 John F. Harkness, Jr., Executive Director, Kenneth L. Marvin, Director of Lawyer Regulation, The Florida Bar, Tallahassee, FL, Lorraine C. Hoffman, Bar Counsel, The Florida Bar, Fort Lauderdale, FL, and Yvette M. Trelles, Past Vice Chair, Fifteenth Judicial Circuit Grievance Committee, West Palm Beach, FL, for Complainant.
Kevin P. Tynan of Richardson and Tynan, PLC, Tamarac, FL, for Respondent.
PER CURIAM.
We have for review a referee's report regarding alleged ethical breaches by Gerald John D'Ambrosio. We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons explained herein, we disapprove the referee's recommendation that D'Ambrosio be disbarred. Instead, we impose a one-year suspension.

FACTS
The Florida Bar filed a five-count complaint against Gerald John D'Ambrosio alleging that he failed to provide notice of his suspension to his clients and the courts, failed to execute written contingency fee agreements, failed to provide competent *979 representation, charged an excessive fee, and appeared in court while suspended from the practice of law. After holding a hearing, the referee issued a report in which he made the following sparse findings and recommendations.
Count I. D'Ambrosio was retained by Karl Bachert to file a corporate bankruptcy for Reecie's Ristorante Italiano (Reecie's), an Italian restaurant, in which Bachert owned a fifty-one percent interest. There was no written agreement concerning the terms and conditions of D'Ambrosio's employment. Although Bachert paid D'Ambrosio $1450, D'Ambrosio never filed the corporate bankruptcy petition. Bachert discharged D'Ambrosio and retained substitute counsel to file the bankruptcy petition. D'Ambrosio never returned any unearned fees or provided Bachert with any accounting.
Bachert later discovered that D'Ambrosio was the registered agent for Kayk International Trading, Inc., (Kayk), a Florida corporation. After Reecie's closed, Kayk operated a restaurant at the premises where Reecie's was previously located.
Count II. D'Ambrosio was retained by Randy Dennis in connection with Dennis's arrest. Again, there was no written agreement concerning the terms and conditions of D'Ambrosio's employment. D'Ambrosio was paid $3000 in advance for the representation.
In January 2002, the Florida Supreme Court ordered a ninety-day suspension for D'Ambrosio, effective February 22, 2002. D'Ambrosio failed to furnish a copy of his suspension order to Dennis. Further, on March 7, 2002, while his suspension was in effect, D'Ambrosio "appeared on behalf of Randy Dennis" before a Palm Beach County circuit court judge. Dennis later discharged D'Ambrosio and retained other counsel. D'Ambrosio never returned any unearned fee or provided Dennis with an accounting.
Count III. D'Ambrosio was retained by David Friedman in connection with a divorce. During his ninety-day suspension, D'Ambrosio "appeared on behalf of David Friedman" before another Palm Beach County circuit court judge. D'Ambrosio failed to furnish Friedman with a copy of his suspension order. Friedman retained another lawyer to represent him in connection with the divorce.[1]
Count IV. D'Ambrosio was retained by Richard Appelman in connection with a mortgage foreclosure. There was no written agreement concerning the terms and conditions of D'Ambrosio's employment. D'Ambrosio and Appelman understood that D'Ambrosio would be paid an unspecified fee, contingent on the success of the foreclosure. D'Ambrosio filed an answer and affirmative defenses to the mortgage foreclosure and a counterclaim for compensatory and punitive damages. D'Ambrosio was not paid any funds in connection with the mortgage foreclosure. Appelman endorsed a $70,000 check, payable to Appelman, over to D'Ambrosio's trust account. The check was deposited but never cleared D'Ambrosio's trust account.
Count V. D'Ambrosio was retained by Appelman in connection with a personal injury claim. There was no written agreement concerning the terms and conditions of D'Ambrosio's employment. D'Ambrosio and Appelman understood that D'Ambrosio would be paid an unspecified fee, contingent *980 upon the success of the personal injury claim. Appelman discharged D'Ambrosio and settled the claim for an unspecified amount.
Without analyzing the facts or discussing any case law, the referee recommended disbarment. In the same abbreviated manner, the referee found that D'Ambrosio violated Rules Regulating the Florida Bar 3-5.1(g) (upon service of suspension order, respondent shall furnish a copy of the order to all clients, opposing counsel or co-counsel, and all courts); 4-1.1 (a lawyer shall provide competent representation to a client, which requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation); 4-1.5(a) (an attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or cost); 4-1.5(f)(1) (a contingent fee shall be in writing); 4-1.16(d) (upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as surrendering papers and property to which the client is entitled); 4-3.4(c) (a lawyer shall not knowingly disobey an obligation under the rules of a tribunal); and 4-8.4(a) (a lawyer shall not violate the rules of professional conduct).
D'Ambrosio petitions this Court for review, arguing that the referee's findings of fact are insufficient to support the recommended sanction of disbarment.

ANALYSIS
A referee's finding of fact carries with it a presumption of correctness that should be upheld unless clearly erroneous or without support in the record. Fla. Bar v. Barrett, 897 So.2d 1269, 1275 (Fla.2005). Absent a showing that the referee's findings are clearly erroneous or lacking in evidentiary support, this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee. Id.
In this case, the crucial issues are intertwined with the events that took place before the circuit courts in counts II (Dennis) and III (Friedman), while D'Ambrosio was suspended. Although this Court defers to the referee's findings of fact, the referee did not make adequate findings demonstrating that D'Ambrosio engaged in the practice of law at the circuit court proceedings. Further, the record of the disciplinary proceeding indicates that there are extremely different accounts of what took place at those circuit court proceedings. The referee did not discuss those differing accounts, make any credibility findings, resolve conflicts in the evidence, or present specific factual findings. Without elaboration, the referee's report simply states that D'Ambrosio "appeared" on behalf of Dennis and Friedman. The report does not provide any findings of fact to clarify the nature of the appearances. The referee's report does not tell this Court whether D'Ambrosio filed papers, presented arguments, counseled Dennis or Friedman, or otherwise actively represented either former client before the court. Thus, there is insufficient support for the conclusion that D'Ambrosio's presence at the proceedings was an attempt to continue representing the former clients. In fact, testimony in the disciplinary record suggests that D'Ambrosio may have attended those circuit court proceedings solely to ensure a smooth transition of his former clients' cases to their new attorneys. D'Ambrosio's mere attendance at a courtroom proceeding, without any accompanying activities or misconduct, does not necessarily support a conclusion that he continued to engage in the practice of law while suspended.
*981 With regard to the disciplinary sanction, this Court does not hesitate to disbar attorneys who continue to engage in the practice of law while suspended. See Fla. Bar v. Forrester, 916 So.2d 647, 654 (Fla.2005); Fla. Bar v. Heptner, 887 So.2d 1036, 1045 (Fla.2004); Fla. Bar v. McAtee, 674 So.2d 734 (Fla.1996). Further, in Florida Bar v. Brown, 635 So.2d 13, 13 (Fla.1994), this Court stated that a "[c]lear violation of any order or disciplinary status that denies an attorney the license to practice law generally is punishable by disbarment." In this case, the referee's report and the record do not sufficiently establish that D'Ambrosio clearly violated this Court's order of suspension by appearing in court. In addition to the inadequacy of factual findings, the referee's report also fails to conduct an analysis of the facts in light of the case law. Given these deficiencies in the record and the referee's report, there is an insufficient basis for this Court to disbar D'Ambrosio. See Fla. Bar v. Rayman, 238 So.2d 594 (Fla.1970) (holding that the evidence did not present the proof necessary to warrant the findings of guilt and disbarment); see also Fla. Bar v. Shoureas, 892 So.2d 1002 (Fla.2004) (stating that disbarment is an extreme measure of discipline and should be resorted to only in cases where the lawyer demonstrates an attitude or course of conduct wholly inconsistent with approved professional standards). Instead of disbarment, the record supports a suspension.
In determining the length of the suspension, the record establishes that D'Ambrosio demonstrated a complete disrespect for the disciplinary process by failing to comply with the disciplinary rules. See R. Regulating Fla. Bar 3-5.1(g) (respondent is required to furnish a copy of a suspension order to clients, opposing counsel, and the courts, and to provide the Bar with an affidavit listing all persons and entities that were furnished copies of the order). D'Ambrosio did not provide his clients, the courts, and some opposing counsel with notice of his suspension. Further, the testimony establishes that D'Ambrosio never advised Dennis of his suspension. In fact, immediately before the hearing discussed in count II, D'Ambrosio informed Dennis that he could not represent Dennis further in the case due to a heart or pacemaker problem, not because of a suspension.
D'Ambrosio's misconduct is further demonstrated by his failure to comply with rule 3-5.1(g), a duty encompassed in this Court's January 17, 2002, order of suspension. Pursuant to rule 3-5.1(g), within thirty days of service of this order, D'Ambrosio was required to file an affidavit with the Bar listing the names and addresses of all persons and entities to whom he sent copies of his suspension order. He did do so until approximately a year later. By this misconduct, D'Ambrosio willfully ignored this Court's January 17, 2002, order of suspension. This disrespect for an order of this Court merits the imposition of serious discipline.
With the exception of finding that D'Ambrosio continued to engage in the practice of law, the record supports the referee's remaining recommendations of guilt. For example, with regard to count I, D'Ambrosio is guilty of violating rules 4-1.1(competence), 4-1.5(a) (excessive fees), and 4-8.4(a) (a lawyer shall not violate the rules of professional conduct). D'Ambrosio failed to return Bachert's phone calls, falsely represented to Bachert that he filed the corporate bankruptcy petition, and ultimately failed to file the petition that he was paid to file. See Fla. Bar v. Centurion, 801 So.2d 858, 860 (Fla.2000) (approving referee's conclusion that respondent was guilty of violating rule 4-1.1 by failing to file all required documents, failing *982 to follow up on the filing of the documents, and failing to comply with court orders). Next, rule 4-1.5(a) provides that a fee is clearly excessive when "a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee exceeds a reasonable fee for services provided to such a degree as to constitute clear overreaching." Because D'Ambrosio never filed the corporate bankruptcy petition, and never returned any portion of the paid $1450 fee, the referee's conclusion is clearly supported. See Fla. Bar v. Carlon, 820 So.2d 891, 893 (Fla.2002) (approving referee's conclusions that respondent violated the rules regarding excessive fees).
For counts II and III, the referee found that D'Ambrosio violated rules 3-5.1(g) (notice to clients, opposing counsel and courts of suspension order) and 4-3.4(c) (knowing disobedience of an obligation under a tribunal's rules). As previously discussed, D'Ambrosio did not give notice of his suspension to his clients, the courts, and some opposing counsel. Therefore, the referee properly found that D'Ambrosio violated rules 3-5.1(g) and 4-3.4(c). See generally Fla. Bar v. Heptner, 887 So.2d 1036 (Fla.2004) (lawyer found guilty of violating rule 3-5.1(g)).
With regard to counts IV and V, D'Ambrosio violated rule 4-1.5(f)(1) (written contingency fee agreement). Appelman's testimony reveals that there was no written contingency agreement in either the mortgage foreclosure case or the personal injury case. Thus, the referee's finding that D'Ambrosio violated rule 4-1.5(f)(1), which requires a contingency fee agreement to be in writing, is supported.
In addition to these rule violations, the referee found four aggravating factors: (1) a pattern of misconduct; (2) multiple offenses; (3) a refusal to acknowledge the wrongful nature of his conduct; and (4) previous disciplinary offenses. See Fla. Bar v. Temmer, 753 So.2d 555 (Fla.1999) (recognizing that the Court sanctions more harshly for cumulative misconduct than for isolated misconduct). Further, the referee specifically found that there are no mitigating factors.
In light of D'Ambrosio's disregard of this Court's order of suspension (as evidenced by his failing to timely inform clients and others of his suspension), the numerous rule violations, the four aggravating factors, and the lack of any mitigating factors, we impose a one-year suspension. See Fla. Bar v. Golden, 563 So.2d 81 (Fla. 1990) (imposing a one-year suspension due to the seriousness of respondent's failure to abide by his suspension, failure to inform the client of his suspension, failure to return funds, his lack of remorse, and his past disciplinary actions). Further, for D'Ambrosio to be reinstated to the practice of law in Florida, he must establish his rehabilitation, in part, by providing an accounting to The Florida Bar as well as to Bachert, Dennis, and Friedman of the funds those clients paid D'Ambrosio in advance. As a condition of reinstatement, D'Ambrosio shall refund any unearned amounts to those clients.

CONCLUSION
Accordingly, we disapprove the referee's conclusory finding that Gerald John D'Ambrosio continued to engage in the practice of law while suspended. We also disapprove the referee's recommendation of disbarment for D'Ambrosio. Instead of disbarment, Gerald John D'Ambrosio is hereby suspended from the practice of law for one year. To be reinstated, he must make an affirmative demonstration of rehabilitation in accord with the Rules Regulating the Florida Bar as well as satisfy the conditions discussed herein.
*983 This suspension will be effective thirty days from the filing of this opinion so that Gerald John D'Ambrosio can close out his practice and protect the interests of existing clients. If D'Ambrosio notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. D'Ambrosio shall accept no new business from the date this opinion is filed until he is reinstated.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida XXXXX-XXXX, for recovery of costs from Gerald John D'Ambrosio in the amount of $3,136.27, for which sum let execution issue.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] For counts II and III, the referee did not provide any facts describing D'Ambrosio's actions in the circuit courts. Thus, it is unclear whether D'Ambrosio was merely present in the courtrooms or whether he attempted to act as an attorney representing Dennis and Friedman.