PER CURIAM.
We have for review a report and recommendation from a referee with regard to the misconduct of Gerald John D’Ambro-sio. We have jurisdiction. See art. V, § 15, Fla. Const. As we more fully explain herein, we approve the recommended sanction of disbarment.
FACTS
In July 2007, pursuant to Rule Regulating the Florida Bar 3 — 7.11(f) (contempt), The Florida Bar filed a petition for contempt and order to show cause directed to D’Ambrosio. Fla. Bar v. D’Ambrosio, Case No. SC07-1369 (hereinafter “contempt case”). This Court issued an order to show cause and after responses were filed a referee was appointed. The final hearing in the contempt case was conducted and concluded in February 2008.
Before the assigned referee completed the report in connection with the contempt case, he was also appointed as referee in another disciplinary case involving D’Am-brosio, Case No. SC08-256 (hereinafter “SC08-256”). Based on a motion by D’Ambrosio, and without objection from the Bar, it was determined that the designated referee would conduct a hearing in SC08-256 and provide a consolidated report that addressed both cases. In the report from that consolidated proceeding, the referee made the following findings and recommendations.
Contempt Case. In October 2006, in Florida Bar v. D’Ambrosio, 946 So.2d 977 (Fla.2006), the Court suspended D’Ambro-sio for one year. The suspension order was based on D’Ambrosio’s demonstration of “complete disrespect for the disciplinary process” by failing to give notice of his prior ninety-day suspension to his clients, the courts, and some opposing counsel. The one-year suspension, which began in November 2006, was to continue for a minimum of one year and thereafter until D’Ambrosio complied with specific terms and conditions established by the Court and secured reinstatement.
Despite being suspended, D’Ambrosio continued to occupy his former law office located in Boca Raton. He maintained his office telephone and fax numbers, and listed his office address and telephone number in the white pages of the telephone book. This contact information remains on his business letterhead. D’Ambrosio testified that since his suspension he only engages in non-legal business (for an entity called Media International Group) on the premises of his former law office. However, D’Ambrosio did not list that *1212 business on his office letterhead and it did not appear in the telephone listings.[1]
In June 2007, while D’Ambrosio was under suspension, he wrote a letter to Gary Kurtz, an attorney in California. The first sentence of D’Ambrosio’s June 2007 letter to Kurtz stated: “I am counsel to Anglo Bio Tran” and affirmatively stated that he had provided legal opinions about the sufficiency of a complaint filed against Anglo Bio Tran and had discussed the legal course he would advise for his “client” in the extant or contemplated litigation. Kurtz reasonably believed D’Ambrosio was a Florida lawyer acting as in-house or general counsel for Anglo Bio Tran.
Based on the letter, as well as testimony presented at the hearing, the referee found D’Ambrosio guilty of engaging in the practice of law while suspended. He clearly represented himself to be a lawyer. The referee found D’Ambrosio acted in complete disregard of the Court’s two pri- or orders suspending him and in contempt of the Supreme Court of Florida.[2]
Case No. SC08-256 (Disciplinary Case). In February 2005, while D’Am-brosio was still a member in good standing of The Florida Bar, Dr. Tom Bolera, D’Ambrosio’s friend and client, contemplated filing a legal malpractice action against his former counsel, John Pcolinski, an Illinois lawyer. D’Ambrosio was never admitted to the practice of law in the State of Illinois. Nevertheless, D’Ambro-sio assisted Bolera in filing and amending a civil action against Pcolinski in Illinois. D’Ambrosio researched Illinois law on the Internet.[3] Further, D’Ambrosio knowingly allowed Bolera to use D’Ambrosio’s law office address, telephone number, and fax number as Bolera’s own address for purposes of the Illinois civil action.
On February 15, 2005, while D’Ambrosio was still a member of The Florida Bar, he wrote a letter to Pcolinski and directed the letter to Pcolinski’s law office in Illinois. In this letter, written on D’Ambrosio’s Florida law office letterhead, D’Ambrosio outlined his client’s claim against Pcolinski and expressed legal opinions about the claim. D’Ambrosio directed Pcolinski to contact his malpractice carrier and to call D’Ambrosio to discuss the case.
On August 18, 2006 (prior to his earlier suspension by this Court), D’Ambrosio wrote a second letter to Pcolinski, using his Florida law office letterhead. D’Am-brosio again outlined the basis for his client’s claim against Pcolinski, expressed legal opinions, and asserted accumulated damages. D’Ambrosio again directed Pco-linski to contact his malpractice carrier. Pcolinski has been a lawyer since 1986. He is admitted in Illinois and Arizona. Having received the communications from D’Ambrosio, Pcolinski reasonably believed that D’Ambrosio was serving as counsel to Dr. Bolera.
Thereafter, Pcolinski was served with a summons and complaint (and then an *1213 amended complaint), filed pro se by Bol-era. Pcolinski noted that the address used by Bolera was the same as D’Ambrosio’s office address. He initiated an investiga-, tion into D’Ambrosio’s conduct in the case, which revealed that D’Ambrosio was not admitted to the practice of law in Illinois. In January 2007, Pcolinski filed a complaint regarding D’Ambrosio’s conduct with The Florida Bar.
The referee took judicial notice of Rule Regulating the Florida Bar 4-5.5 (Unlicensed Practice of Law) and the comparable Illinois law on the subject: Illinois Rule of Professional Conduct 5.5 (Unauthorized Practice of Law). After considering these rules, the letters in evidence, and testimony, the referee found that D’Am-brosio engaged in the “unlicensed practice of law in Illinois” in violation of the Rules Regulating the Florida Bar.
The referee concluded that D’Ambrosio practiced law in the State of Illinois, without permission to practice in that jurisdiction, in violation of the rules of professional conduct in both states. The referee recommended that D’Ambrosio be found guilty of violating Rule Regulating the Florida Bar 4-5.5(a) (a lawyer shall not practice law in a jurisdiction other than the lawyer’s home state, in violation of the regulation of the legal profession in that jurisdiction, or in violation of the regulation of the legal profession in the lawyer’s home state or assist another in doing so). Because D’Ambrosio knowingly and intentionally permitted, and even assisted, Bol-era in filing a false pleading in Illinois (by allowing Bolera to use D’Ambrosio’s law office address as Bolera’s address in a civil action), the referee recommended that D’Ambrosio be found guilty of violating Rules Regulating the Florida Bar 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation) and 4-8.4(d) (a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice). Because the foregoing misconduct was willful and intentional, the referee recommended that D’Ambrosio be found guilty of violating Rules Regulating the Florida Bar: 3-4.2 (violation of the Rules of Professional Conduct is a cause for discipline); 3-4.3 (the commission by a lawyer of any act that is unlawful or contrary to honesty and justice, whether the act is committed in the course of the attorney’s relations as an attorney or otherwise, whether committed within or outside the state of Florida, and whether or not the act is a felony or misdemeanor, may constitute a cause for discipline); and 4-8.4(a) (a lawyer shall not violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another).
As to discipline, the referee recommended disbarment. In making this recommendation, the referee relied in part on D’Ambrosio’s cumulative misconduct. See Fla. Bar v. Golden, 566 So.2d 1286, 1287 (Fla.1990) (holding cumulative misconduct may be found when the misconduct occurs near in time to other offenses); Fla. Bar v. Lawless, 640 So.2d 1098 (Fla.1994) (recognizing that the Court generally imposes a greater sanction for cumulative misconduct than for isolated misconduct). Because the Bar prevailed in this case, the referee recommended that the Bar be awarded costs of $5,018.27.
The referee did not find any mitigating factors. With regard to aggravating factors, the referee found (a) prior disciplinary offenses — D’Ambrosio was admonished for incompetence by court order in April 1994; publicly reprimanded for neglect and trust accounting violations in July 1999; suspended for ninety days for misrepresentation in January 2002; and sus *1214 pended for one year in October 2006 for contempt of court and violation of his previous ninety-day suspension; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; and (e) substantial experience in the practice of law— D’Ambrosio was admitted to The Florida Bar in 1987.
D’Ambrosio sought review of the referee’s findings of fact, recommendations of guilt, and recommended sanction. The Bar filed an answer brief and D’Ambrosio filed a reply brief.
ANALYSIS
First, D’Ambrosio asserts that the referee should have granted his motion to dismiss the Bar’s complaint, which was denied on May 5, 2008. D’Ambrosio argues that the referee did not properly address his arguments regarding the Bai*’s impermissible tactics. He asserts that the Bar intentionally delayed bringing the disciplinary case against him, assigned case number SC08-256, until it could be considered with the contempt case. D’Ambrosio claims this constitutes the unfair practice of “stacking cases” against a respondent. See Fla. Bar v. Rubin, 362 So.2d 12 (Fla.1978) (providing that the Bar is not free to withhold a referee’s report that it finds too lenient until additional cases can be developed against the affected attorney). D’Ambrosio argues that the referee did not fully address these arguments and that his motion should have been granted.
A ruling on a motion to dismiss based on a pure question of law is subject to de novo review. See Fla. Bar v. Greene, 926 So.2d 1195, 1199 (Fla.2006); see also Fla. Bar v. Roth, 693 So.2d 969, 972 (Fla.1997) (providing that the Court reviews the referee’s ruling on a motion to dismiss to determine if the referee erred). The May 5, 2008, order facially reflects that the referee held a hearing on May 1, 2008. One hour was scheduled for consideration of D’Ambrosio’s motion to dismiss. Under Florida law, motions to dismiss require the trier of fact to accept the factual allegations of the complaint as true and consider the allegations in the light most favorable to the nonmoving party. See Greene, 926 So.2d at 1199; Kaufman v. A-1 Bus Lines, Inc., 363 So.2d 61 (Fla. 3d DCA 1978). Further, it is inappropriate for the referee to determine factual issues at that stage in the proceedings. See Greene, 926 So.2d at 1199-1200. Pursuant to this case law, it would have been improper for the referee to have dismissed the disciplinary case, SC08-256, based simply on allegations of “stacking.” The referee was required to view the case in the light most favorable to the Bar, and the referee could not assume that the Bar had intentionally delayed the case.
In addition, approximately two months before the referee issued the order denying the motion to dismiss, D’Ambrosio had voluntarily agreed to consolidate the two cases. See Agreed Order Consolidating Cases for Disciplinary Recommendation and/or Report of Referee, Fla. Bar v. D’Ambrosio, Nos. SC07-1369 & SC08-256 (Fla. referee order filed Mar. 14, 2008). Thus, D’Ambrosio’s claim that the Bar engaged in stacking is meritless. In fact, the record reveals that D’Ambrosio’s counsel specifically stated during a hearing that D’Ambrosio agreed to the referee considering both cases together for the purposes of making a single recommendation of discipline. At that point, D’Ambrosio did not raise the “stacking” claims; in fact, D’Am-brosio again agreed to joint consideration of the two cases.
Thus, upon application of the law governing motions to dismiss, as well as D’Ambrosio’s agreement to consolidate the cases, we conclude that the referee properly denied D’Ambrosio’s motion to dismiss.
*1215 Second, D’Ambrosio asserts that the referee abused his discretion by “sua sponte” taking judicial notice of the Illinois rule regarding the unlicensed practice of law. This argument is also without merit. Contrary to D’Ambrosio’s claims, the record indicates that the referee did not take judicial notice of these matters sua sponte; rather, he did so at the request of Bar counsel, in open court, during the hearing. D’Ambrosio’s counsel, who was present, did not object.
Further, the referee did not take judicial notice of any disputable “facts”; the referee took notice of another state’s published rules. Section 90.202, Florida Statutes (2007), plainly states that a court may take judicial notice of:
(2) Decisional, constitutional, and public statutory law of every other state, territory, and jurisdiction of the United States.
[[Image here]]
(5) Official actions of the legislative, executive, and judicial departments of the United States and of any state, territory, or jurisdiction of the United States.
[[Image here]]
(7)Rules of court of any court of this state or of any court of record of the United States or of any other state, territory, or jurisdiction of the United States.
Pursuant to the statute, it is clear that the referee could take judicial notice of the Illinois disciplinary rule and any related case law.
 In addition, it is well established that Bar disciplinary proceedings are quasi-judicial rather than civil or criminal. The referee is not bound by the technical rules of evidence. On review, a referee’s decision regarding the admissibility of evidence will not be disturbed absent an abuse of discretion. See Fla. Bar v. Tobkin, 944 So.2d 219, 224 (Fla.2006); Fla. Bar v. Rotstein, 835 So.2d 241, 244 (Fla.2002). The referee did not abuse his discretion by taking judicial notice of the material provided by Bar counsel in open court, during a hearing, regarding established Illinois law.
Third, D’Ambrosio asserts that the referee’s findings of fact are not supported by the evidence and, in turn, the findings of fact do not support the referee’s recommendation that D’Ambrosio be found guilty of violating the specified rules.[4]
D’Ambrosio’s argument challenges the referee’s report on two levels: both the findings of fact and the recommendations of guilt. This Court has repeatedly stated that with regard to facts, this Court’s review is limited, and if a referee’s findings of fact are supported by competent, substantial evidence in the record, this Court will not reweigh the evidence and substitute its judgment for that of the referee. See Fla. Bar v. Frederick, 756 So.2d 79, 86 (Fla.2000); see also Fla. Bar v. Jordan, 705 So.2d 1387, 1390 (Fla.1998). Thus, D’Ambrosio has the burden to demonstrate that the referee’s findings of fact are unsupported.
*1216 Next, the standard of review for a referee’s recommendations as to guilt is that the referee’s factual findings must be sufficient under the applicable rules to support the recommendations as to guilt. See Fla. Bar v. Shoureas, 913 So.2d 554, 557-58 (Fla.2005).
Contempt Case. D’Ambrosio admits it was poor judgment to refer to himself as “counsel to Anglo Bio Tran” in the letter he sent to California attorney Kurtz while D’Ambrosio was suspended. Nevertheless, D’Ambrosio claims that the statements in the letter were based on D’Ambrosio’s personal knowledge; therefore, his actions should not be viewed as engaging in the practice of law in violation of his suspension.
Findings of Fact D’Ambrosio has failed to meet his burden of showing that the referee’s findings of fact are unsupported. The record demonstrates that D’Ambrosio sent the letter to Kurtz while D’Ambrosio was suspended. D’Ambrosio was suspended for one year, effective November 2006, Florida Bar v. D’Ambrosio, 946 So.2d 977 (Fla.2006), and he has not been reinstated. The letter to Kurtz was dated June 28, 2007.
Further, the text of the letter plainly states: “I am counsel to Anglo Bio Tran.” The subject line provides a reference to the potential case — “Gould Adv. v. Anglo Bio Trans. PLC.” In addition, the referee is supported in finding that the letter provided legal opinions about the potential case, as the letter states:
The complaint you filed is bogus and does not reflect any agreement between Gould Advertising and any of the parties you identified in the complaint. The complaint is vague for several reasons, not the least of which is that no contract was ever entered into....
What you also failed to put in your complaint....
I will not advise to pay a nuisance claim, but have advised the parties to retain California counsel to defend this matter. They would then seek damages for the false representations your client has made.
Although D’Ambrosio argues that his letter to Kurtz did not represent legal opinions, his argument is erroneous. D’Am-brosio discussed several legal matters in his letter, such as the sufficiency of the complaint, the lack of a contract, and Gould’s failure to include certain documents with the complaint. Further, D’Ambrosio stated that he advised Anglo Bio Tran not to pay a “nuisance claim,” to retain California counsel, and to seek damages. These statements constitute the expression of legal opinions.
We conclude that the referee’s findings of fact, that D’Ambrosio engaged in the practice of law while suspended and that he held himself out as a lawyer while suspended, are supported by competent, substantial evidence in the record.
Recommendations of Guilt. We conclude that the referee’s factual findings are sufficient to support the recommendations as to guilt. See Shoureas, 913 So.2d at 557-58. The referee found that D’Ambro-sio acted in complete disregard of the Court’s prior suspension order and is in contempt of the Supreme Court of Florida. We agree — by continuing to practice law while suspended and holding himself out as an attorney, D’Ambrosio is guilty of violating the Court’s order of suspension.
Case No. SC08-256 (Disciplinary Case). D’Ambrosio notes the referee found that he assisted Bolera in filing and amending the civil action for malpractice in Illinois. D’Ambrosio claims his actions did not constitute the practice of law because one does not need to be a licensed attorney to research law on the internet; *1217 paralegals and untrained people engage in such research every day.[5] D’Ambrosio asserts that the referee’s recommendation that he be found guilty of engaging in the unlicensed practice of law in Illinois is unsupported.
Findings of Fact. In the Illinois filing, D’Ambrosio permitted Bolera to use D’Ambrosio’s address as Bolera’s residential address. This finding is supported by the record.
Also, the referee found that D’Ambrosio “assisted Dr. Bolera in filing and amending a civil action against Mr. Pcolinski, in Illinois.” The record demonstrates that while D’Ambrosio was still licensed to practice law in Florida (before he was suspended), he sent two letters (in February 2005 and August 2006) to Illinois attorney Pcolinski in contemplation of a malpractice action against Pcolinski on behalf of D’Ambro-sio’s client Bolera. The two letters are in the record. These letters standing alone do not constitute a violation. However, D’Ambrosio engaged in further conduct. The record and testimony establish that D’Ambrosio was not licensed to practice law in Illinois and did not seek pro hac vice status. D’Ambrosio admitted researching Illinois law on the Internet to work on this case. In addition, the record demonstrates that while D’Ambrosio was suspended, D’Ambrosio used a paralegal so he could assist Bolera to proceed “pro se” in the Illinois matters. We conclude that the referee’s findings of fact are supported by competent, substantial evidence in the record.
Recommendations of Guilt. D’Ambro-sio allowed Bolera to file documents, in which Bolera claimed D’Ambrosio’s office address as his residential address. Such deliberately misleading information on a court filing violates rules 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation) and 4-8.4(d) (a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice). Contrary to D’Ambrosio’s claims, we conclude that these facts support the referee’s recommendations of guilt. See Shoureas, 913 So.2d at 557-58.
Next, D’Ambrosio assisted Bolera in the civil action against Pcolinski. D’Ambrosio was not licensed to practice law in Illinois; indeed, his work with the paralegal demonstrates that he even continued to assist Bolera after he was suspended in Florida. An attorney cannot counsel others to do what the attorney is not permitted to do. See R. Regulating Fla. Bar 4-8.4(a) (a lawyer shall not violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another). Based on these facts, the referee’s recommendation of guilt is supported. See Shoureas, 913 So.2d at 557-58.
The referee also recommended that D’Ambrosio be found guilty of violating Rule Regulating the Florida Bar 4-5.5(a) (a lawyer shall not practice law in a jurisdiction other than the lawyer’s home state in violation of the regulation of the legal profession in that jurisdiction or in violation of the regulation of the legal profession in the lawyer’s home state or assist *1218 another in doing so) for practicing law in Illinois without admission or permission to practice in that jurisdiction, in violation of the rules of professional conduct in both Illinois and Florida. The case of Florida Bar v. Springer, 873 So.2d 317 (Fla.2004), provides guidance. Springer, a Florida attorney, was found to have practiced law in Georgia, where he was not licensed. A client asked Springer to defend him in a real property partition action in Georgia. Springer never filed a pro hac vice motion or a notice of appearance with the Georgia trial court. In fact, Springer did not file any documents with the court during the case and did not appear at trial. However, he did communicate with the plaintiffs counsel. Along with numerous other rule violations, the referee recommended finding Springer guilty of violating rule 4-5.5(a). The Court approved the referee’s recommendation of guilt.
D’Ambrosio’s letters to Pcolinski were on letterhead printed with “Gerald J. D’Ambrosio, Esq. Attorney at Law.” The subject line identifies the potential case of “Jafari et al v. Oak Brook Spine, et al.” In the letter dated February 15, 2005, D’Ambrosio stated that there was a judgment against Drs. Bolera, Leger, and Tric-hart in the amount of $160,702.61, and that they were “unable to minimize their damages because you failed to abide by discovery orders entered by the court.” After referring to a letter written by another attorney, a Mr. Cowden, “which outlines the problems they had with this case,” D’Ambrosio directs Pcolinski to “contact me and your malpractice insurance carrier.”
In the second letter, dated August 18, 2006, D’Ambrosio noted that the “matter has not been resolved,” that “[djamages have accumulated,” and the “cause of the damage was the entry of Summary Judgment and a Final Judgment based on the parties inability to call witnesses for discovery violations.” In the letter, he also stated that the “Illinois two (2) year statute will run on September 21, 2004. Please contact your insurance carrier in this matter. My clients have instructed me to retain Illinois counsel and file appropriate action.” D’Ambrosio’s actions did not end at this stage but he continued further.
D’Ambrosio’s letters appear to be communications between attorneys regarding a potential legal case. Further, D’Ambro-sio researched Illinois law on the Internet and assisted Bolera directly and through the services of a paralegal in filing and amending the civil action while he was suspended. Based on these facts, and pursuant to Springer, we conclude that the referee’s findings of fact are sufficient to support the recommendation of guilt for violating rule 4-5.5(a). See Shoureas, 913 So.2d at 557-58.
Fourth, D’Ambrosio challenges the referee’s recommended sanction of disbarment, arguing that the sanction is too harsh considering that he merely wrote a letter to a California lawyer while he was suspended.
In reviewing a referee’s recommended discipline, this Court’s scope of review is broader than that afforded to the referee’s findings of fact because, ultimately, it is the Court’s responsibility to order the appropriate sanction. See Fla. Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also art. Y, § 15, Fla. Const. However, generally speaking, this Court will not second-guess the referee’s recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999).
*1219 If the facts were as simple and the conduct as inadvertent as D’Ambrosio asserts, the sanction of disbarment might seem harsh. He claims his only misconduct was writing the letter to California attorney Kurtz. Contrary to D’Ambrosio’s claims, crucial facts in the record, which were discussed during oral argument before the Court, indicate that D’Ambrosio engaged in significant misconduct. During oral argument, D’Ambrosio admitted that when he was suspended he used a paralegal to assist Bolera proceed “pro se” in the Illinois matters. Further, the record demonstrates that while he was suspended, D’Ambrosio engaged in a sham by using the paralegal so he could continue engaging in the practice of law.
In the hearings before the referee, D’Ambrosio testified that he recommended that Bolera use a paralegal to assist him. D’Ambrosio proposed an individual who had worked for D’Ambrosio. Thereafter, D’Ambrosio provided the Illinois forms to the paralegal and coordinated matters. As D’Ambrosio stated to the Grievance Committee in a hearing:
Question: Do you know who actually typed up these documents?
[D’Ambrosio’s] Answer: They were typed up by [the paralegal]. He emailed them to me. I printed them out. Sent them to — called Tom [Bolera] in. Said you’ve got to sign these things. Send them out.
The Bar asked D’Ambrosio, “Why would you be in the interface between the two [Bolera and the paralegal]?” D’Ambrosio replied, “They didn’t really know each other and Tom [Bolera] wasn’t paying [the paralegal].”
D’Ambrosio’s sworn statement, taken by The Florida Bar’s Grievance Committee, indicates that the paralegal never met or spoke with Bolera. D’Ambrosio was the conduit for any communications. The paralegal never sent anything directly to Bolera — the paralegal’s work was sent to D’Ambrosio, who then communicated with Bolera. D’Ambrosio admitted this was the procedure, especially for the amended complaint (which was filed subsequent to D’Ambrosio’s suspension) and an affidavit. Further, D’Ambrosio stated that he had an exhibit from the original complaint, which he had to include with the amended complaint.
In Florida Bar v. Forrester, 916 So.2d 647, 653 (Fla.2005), while the respondent was suspended for sixty days, she continued to operate her law practice by hiring and directing a young, inexperienced recent law school graduate. Even though she was suspended, Forrester directed the legal work and actively supervised the new associate’s work. Like D’Ambrosio, For-rester deliberately took this course of action, which was a sham, so the suspended attorney could continue engaging in the practice of law. The Court disbarred For-rester for her misconduct. Thus, the referee is supported by case law in recommending disbarment for D’Ambrosio.
D’Ambrosio was under suspension by order of the Court. Even though he was suspended, D’Ambrosio continued to engage in the practice of law by providing legal services to Bolera through the paralegal and writing to California attorney Kurtz. D’Ambrosio is guilty of contempt for willfully disobeying the Court’s order of suspension. Further, this is the second case in which D’Ambrosio has disobeyed the Court’s orders of suspension.
The Court does not hesitate to disbar attorneys who continue to engage in the practice of law while suspended. See Forrester, 916 So.2d at 654; Fla. Bar v. Heptner, 887 So.2d 1036 (Fla.2004); Fla. Bar v. McAtee, 674 So.2d 734 (Fla.1996). Further, in Florida Bar v. Brown, 635 *1220 So.2d 13, 13 (Fla.1994), we stated that a “[c]lear violation of any order or disciplinary status that denies an attorney the license to practice law generally is punishable by disbarment.”
In addition, D’Ambrosio has a disciplinary history which demonstrates that his conduct is not improving. He received an admonishment in 1994. D’Ambrosio was reprimanded in 1999. Fla. Bar v. D’Ambrosio, 737 So.2d 552 (Fla.1999) (table report of unpublished order). In 2002, he was suspended for ninety days. Fla. Bar v. D’Ambrosio, 814 So.2d 441 (Fla.2002) (table report of unpublished order). In 2006, the Court found that D’Ambrosio “demonstrated a complete disrespect for the disciplinary process by failing to comply with the disciplinary rules” and “willfully ignored this Court’s January 17, 2002, order of suspension.” Fla. Bar v. D’Ambrosio, 946 So.2d 977, 981 (Fla.2006) (imposing a one-year suspension on D’Ambro-sio because he had violated numerous rules, had four aggravating factors, and had no mitigating factors). During both suspensions, he has engaged in further misconduct. The Court generally imposes a greater sanction for cumulative misconduct, such as that demonstrated by D’Am-brosio, than for isolated misconduct. Fla. Bar v. Lawless, 640 So.2d 1098 (Fla.1994).[6]
Accordingly, based on D’Ambrosio’s egregious misconduct and existing case law, we approve the referee’s recommended sanction and disbar DAmbrosio.
CONCLUSION
Accordingly, we approve the referee’s findings of fact, recommendations of guilt, and recommended discipline. The Florida Bar’s petition for contempt is granted. We hereby disbar Gerald John D’Ambro-sio effective immediately. Because D’Am-brosio has been suspended since November 18, 2006, it is unnecessary to provide him with thirty days to close out his practice of law to protect the interests of existing clients.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Gerald John D’Ambrosio in the amount of $5,018.27, for which sum let execution issue.
It is so ordered.
QUINCE, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, LABARGA, and PERRY, JJ., concur.

. D'Ambrosio testified, and the Bar did not refute, that all signage identifying him as an attorney had been removed.

. The Bar also alleged that D'Ambrosio engaged in the practice of law while suspended based on a letter written by Phyllis Folsom and sent to The Florida Bar. Due to insufficient evidence, the referee found that the Bar did not prove that D'Ambrosio engaged in the practice of law regarding the Folsom matter. Thus, the referee found D’Ambrosio not guilty of contempt regarding these events. Neither party has sought review of that issue.

.Before the referee, D’Ambrosio also testified that he assisted Bolera in a civil action that was filed in Oregon. D'Ambrosio is not licensed to practice law in Oregon. The referee did not find any rule violations based on the Oregon matters, which arose at the hearing.

. To support his position, D'Ambrosio presents arguments that rely heavily on his own testimony. The Court has long stated that because the referee is in the best position to judge the credibility of witnesses, his judgment regarding credibility should not be overturned absent clear and convincing evidence that his judgment is incorrect. See Fla. Bar v. Forrester, 916 So.2d 647, 652 (Fla.2005). This burden cannot be met merely by pointing to contradictory evidence when there is competent, substantial evidence in the record supporting the referee's findings. See Fla. Bar v. Glueck, 985 So.2d 1052, 1056 (Fla.2008). By pointing to his own testimony, D'Ambrosio has not satisfied his burden.

. D'Ambrosio overlooks the requirement that paralegals work only under the supervision of an attorney. See R. Regulating Fla. Bar 4-5.3 (Responsibilities Regarding Nonlawyer Assistants); 10-2.1(b) (Paralegal or Legal Assistant). Further, as provided by chapter 10 of the Rules Regulating the Florida Bar, it is illegal for nonlawyers to advise others regarding their legal rights or to engage in the practice of law. See generally R. Regulating Fla. Bar 10-2.1(c) (Nonlawyer or Nonattor-ney).

. D’Ambrosio claims that he has not engaged in cumulative misconduct. His argument is misguided. In Florida Bar v. D’Ambrosio, 946 So.2d 977 (Fla.2006), the Court held that D'Ambrosio violated the previous order that imposed a ninety-day suspension. Even though he was not found guilty of continuing to engage in the practice of law, he violated several disciplinary mies related to his suspension. Thus, by the previous case and the case herein, D’Ambrosio has repeatedly demonstrated disrespect of the Court’s orders of suspension. This repeated misconduct, as well as his other disciplinary history, demonstrates that D'Ambrosio has engaged in cumulative misconduct.